[ Filed July 1, 1890. ]

## J. P. FAULL, APPELLANT, *v.* H. W. COOKE, RESPONDENT.

PUBLIC LANDS OF THE UNITED STATES—HOMESTEAD CLAIMANT.--TITLE BY RELATION. —By the act of congress of March 14, 1880 (21 stat. 141), any settler who had or should thereafter settle on any of the public lands of the United States, whether surveyed or unsurveyed, with the intention of claiming the same under the homestead laws, was allowed the same time to file his homestead application and perfect his original entry in the United States land-office as was allowed to settlers under the preëmption laws to put their claims on record, and his right relates back to the date of settlement, the same as if he settled under the preëmption laws.

HOMESTEAD CLAIMANT'S RIPARIAN RIGHTS.—A homestead claimant's riparian rights attach from the date of his settlement provided he complies with the law and obtains a patent for the land; and when such patent is issued it relates to the date of settlement and cuts off the right to divert a stream of water running through such homestead.

To MAKE TITLE UNDER AN EXECUTION SALE, THE JUDGMENT MUST BE PROVEN.—An execution, regular upon its face, emanating from a court of competent jurisdiction, will protect an officer who obeys it; but when a purchaser claims title under an execution sale, the judgment upon which the execution was issued must be proven.

EXECUTION—WHEN TO BE RETURNED.—By section 278, Hill's Code, an execution is returnable within sixty days after its receipt by the sheriff; and by section 293 the time may be enlarged thirty days by the consent of the plaintiff endorsed upon the writ.

EXECUTION AFTER TIME TO RETURN HAS EXPIRED IS FUNCTUS OFFICIO.—When there has been no levy under an execution, and the return day has expired, and the writ is *functus officio*, and confers no authority whatever, and a levy and sale by virtue of it is a nullity.

HOMESTEAD—EXEMPT FROM FORCED SALE FOR DEBT CONTRACTED BEFORE THE ISSU-ANCE OF PATENT.—Under the act of congress granting homesteads to actual settlers on the public lands of the United States, a homestead is not liable to be sold by virtue of an execution issued upon a judgment rendered for a debt contracted before a patent is issued for such homestead. *Clark* v. *Bayley*, 5 Or. 343, followed.

DEED—AN EX-SHERIFF HAS NO POWER TO EXECUTE.—The sheriff in office at the time the certificate is produced and the deed demanded is the proper officer to make the deed, and not the one whose term of office has expired, although he may have made the sale before his office expired.

ADVERSE USER OF WATER—EVIDENCE EXAMINED AND HELD INSUFFICIENT.—The evidence as to adverse user of the water in controversy examined and held insufficient to prove an adverse user for ten years.

APPEAL from Baker county: L. B. ISON, judge.

The object of this suit is to enjoin the defendant from disturbing the plaintiff's use of certain water taken out of Connor creek in Baker county, Oregon, and to establish and quiet the plaintiff's title thereto. The substance of the plaintiff's complaint is as follows: That in the year 1877 the plaintiff's grantors, then being citizens of the United States of America, constructed a ditch from a point on Connor creek, then and now being a national water-course, in Baker county, State of Oregon, through the unoccupied and unappropriated public lands of the United States of America, to a point known as Douglass gulch, which said gulch debouched into Snake river, in said county; that said ditch was of the capacity of about two hundred and fifty inches of water; that plaintiff's grantors appropriated at said time 260 inches of water of the waters of said Connor creek, and conveyed the same through said ditch to the said Douglass gulch for the purpose of mining in said gulch themselves, and for the purpose of sale thereafter to other miners, and for the purpose of sale to ranchers and farmers for irrigating purposes; that at the date of said construction and said appropriation, plaintiff's grantors were the owners of all the ditches and water rights on said Connor creek below the point where said ditch taps said Connor creek, as hereinafter alleged, and had the right at that point to appropriate all the waters of said creek, and

did so appropriate the same; that the plaintiff and his
grantors from the date aforesaid have used continuously
through said ditch up to the time of the commission of the
acts of the defendant hereinafter set forth the waters of
said Connor creek for mining, sale to miners and sale for irri-
gating purposes, and that said ditch and water are of the
value of $5,000; that the plaintiff is now the owner, by
proper conveyances from his grantors, who constructed
said ditch and appropriated the waters of Connor creek,
as aforesaid, of said waters, and also all of the ditches and
water rights below the mouth of said ditch existing at the
time of the construction of said ditch, and the appropri-
ation of the waters of Connor creek, and has been the
owner thereof ever since 1886; that about the fifteenth day
of March, 1888, the plaintiff sold, to be used during the
irrigating season of 1888, 260 inches of water to E. M.
Hill, to be conveyed through said ditch and used upon the
farm of said Hill for the purpose of irrigating the crops
upon said farm, to wit: fifty acres of meadow land, about five
acres of orchard and five acres of corn and garden land.
Plaintiff alleges that the use of the waters aforesaid is
reasonable and necessary for the purpose of raising and
preserving said crops and said orchard, and that at the
time of the acts of the defendant, hereinafter set forth,
the said Hill was using said waters for the purposes afore-
said in a reasonable and proper manner, and that without
the use of said waters so sold by the plaintiff to said Hill
the crops of said Hill and his orchard aforesaid will be
totally ruined; that said crops and said orchard are about
the value of three thousand dollars. The plaintiff alleges
that the location and appropriation of the waters of said
Connor creek in the ditch aforesaid was made according
to the local laws and customs of Baker county, and of the
State of Oregon, and according to the decisions of the
courts of the State of Oregon, and of the United States, and
was and is prior to any other location by any other persons
of any of the waters of said Connor creek below the head
of said ditch; that on the twelfth day of April, 1888, while

the said Hill was using the water of said ditch so sold to him, in irrigating his crops and orchard aforesaid, the defendant wrongfully and without any color of right entered upon said ditch at a point about one mile from the head of the same, and cut said ditch and turned the water off the same, and diverted the water therefrom, and let the same run to waste, and thereby prevented the said Hill from using the same for agricultural purposes; and since said day the defendant, on five occasions, and at five different times, at or about the place aforesaid, has cut the said ditch and turned the waters thereof to waste, and threatens to continue to cut the said ditch, and waste the waters thereof, whenever the plaintiff or said Hill repairs the same; that the said acts of the defendant and his declared intentions constitute a continuing trespass upon the rights of the plaintiff as the owner of said ditch and the said water right, and of the right of the said Hill in the waters sold to him by the plaintiff, and will, if not prevented by the court, be an irreparable injury both to the plaintiff and the said Hill; that by reason of the said wrongful and malicious acts and trespasses committed as hereinbefore alleged, the plaintiff has been damaged in the sum of five hundred dollars; that the season during which water is used for irrigating purposes is now at hand, and that unless the defendant be enjoined from further interference with said ditch, and further trespasses, the crops upon which said waters are intended to irrigate will be wholly ruined and lost to the owner thereof.

After denying each material allegation of the complaint, the defendant's answer contains the following separate defense: That the defendant is the owner of certain real estate in Baker county, Oregon, described as follows: Lots Nos. 1, 2, 3 and 4, in section 14, and No. 2 in section 31, T. 12 S., R. E. 45 Willamette meridian, containing about 160 acres of agricultural, fruit-growing and grazing land, through which said Connor creek flows in its natural channel; that defendant is a riparian owner and proprietor in and upon said creek, and that defendant and his grantors

are and have been seized and in possession of the said
lands and of the said creek and its waters ever since about
the month of ——, 1869; that said lands are now used for
agricultural, fruit-growing and grazing purposes, and
have so been used for the period of about 18 'years last
past, and are of great value to this defendant; that said
lands require artificial irrigation, and without it they are
comparatively worthless; and that during all of said time
of occupation and ownership, the defendant and his
grantors have used the waters of said creek for said pur-
pose of irrigating said land; that upon said land there are
now growing about two hundred valuable fruit trees,
besides a large amount of shade and ornamental shrub-
bery, crops, grass, etc., all of which is of the value of
three thousand dollars, and that the yearly product of
said land is of the value of about $1,000; that in or about
the month of ——, 1869, defendants' grantors and pre-
decessors appropriated about 300 inches of the waters of
said Connor creek, and took the same by ditches from the
channel of said creek, for mining and agricultural pur-
poses, and for irrigating the aforesaid lands, and by said
ditches conveyed the same to and upon the said land, and
ever since said time have used and up to the commence-
ment of this suit continued to use said waters for said
purposes, and that defendant's rights in and to said creek
and its waters are prior in time and right to any and all
claims of plaintiff, and that said ditches above named are
reasonably worth to the defendant the sum of $1,000 or
more; that on or about the —— day of February last, the
plaintiff, by his agents or employés, wrongfully, and with
full knowledge of the defendant's rights and claims
therein, entered upon the channel of said creek, at a point
above defendant's ditches of recent use, and then and
there, wilfully and wrongfully, and against the protest of
this defendant and his agents, turned aside the waters of
said said creek, and led and carried away the whole
thereof; and, without the consent of defendant, did dig,
cut and open a ditch upon and through defendant's said

land for the purpose of conducting the waters of said creek to lands adjacent, and did so conduct the same away and still continues to do so, and thereby deprive the defendant of the same and of the use thereof, contrary to his rights therein, both as a riparian owner and as a prior appropriator; and that said ditch so dug and opened upon and through defendant's land, as aforesaid, is the same ditch mentioned and described by plaintiff in his complaint herein. Defendant admits that he cut said ditch, but wholly within and upon his own land, and for the purpose of restoring the waters of said creek to his own use on said land as aforesaid; that, by said wrongful acts of plaintiff and his agents, as aforesaid, the defendant is wholly deprived of the waters of said creek, and his ditches and trenches thereby rendered valueless, and his said fruit and other trees, crops, grass, etc., are in great peril, and unless said water is speedily restored to its natural channel and left to his use by and through the said last-named ditches, will soon be a total loss, to the defendant's damage as aforesaid, and the further and permanent injury to all of the defendant's said land.

The reply denies the new matter in the answer, and then alleges by way of avoidance thereof the following: That in the year 1875 one Christian Hinckler was the owner of the ditches and water rights mentioned and claimed to be owned by the defendant in his separate answer herein; that in said year all the right, title and interest of said Hinckler in and to said ditches and water rights were sold by the sheriff of Baker county, Oregon, under and by virtue of an execution and order of sale issued upon a judgment theretofore rendered against said Hinckler in the circuit court of the State of Oregon for the county of Baker; that the plaintiff's grantors were the purchasers of the said ditches and water rights at the said sheriff's sale, and that in the year last aforesaid the sale was duly and regularly confirmed by the said circuit court and a deed conveying the said ditches and water rights belonging thereto executed by the said sheriff to the plaintiff's

grantors, as directed by said order of confirmation; that the plaintiff and his grantors, ever since the time of said sheriff's sale, have been the owners of and entitled to the sole use and possession of the same up to the time of the diversion thereof by the defendant as alleged in the complaint.

By the reply the plaintiff pleads the statute of limitations against the rights claimed by the defendant in his answer, and further seeks to fortify his own claim to the use of the water by pleading the statute of limitations.

The pleadings on neither side were questioned in the court below by either a motion or demurrer. The evidence was all taken in writing upon an order of reference from which the court below found the facts and law in favor of the defendant and rendered a decree in accordance with such findings, from which the plaintiff has appealed.

*C. H. Carey,* for Appellant.

*M. L. Olmsted* and *J. F. Watson,* for Respondent.

STRAHAN, J., delivered the opinion of the court.

A proper disposition of this case requires that we should notice the sources of title set up by the respective claimants, and in doing so it will be most convenient to first examine the defendant's title. In the year 1869 the lands through which Connor creek flows, and which are described in the defendant's answer, were unsurveyed and unoccupied public lands of the United States. During that year one Christian Hinckler settled upon the same as a homestead, and after the said land had been surveyed, on the sixth day of March, 1883, he made his regular application therefor, alleging his settlement thereon in February or March, 1869. On this application a patent was duly issued by the United States to said Hinckler, dated the thirteenth day of March, 1885. After Hinckler had perfected his right to said land under the homestead laws of the United States, he died intestate in Baker county, Oregon, and John Geiser was duly appointed his administrator. There-

after such proceedings were had in the county court of Baker county, Oregon, in the administration of said estate, that an order was duly made by said court, by virtue of which order the said real estate was sold by said administrator to the defendant Cooke for the sum of $1,550. This sale was duly confirmed by said court, and on the fifth day of July, 1887, said administrator executed and delivered to the defendant Cooke a deed to said premises, together with all the water rights and privileges, ditches and ditch rights, and all and singular the improvements, tenements, hereditaments and appurtenances.

The evidence tends to show that as early as 1872 Hinckler, commencing on his homestead and near the line, cut a ditch extending nearly the entire length of his claim, by means of which he diverted the waters of Connor creek for the purposes of irrigating his land for agricultural and horticultural purposes, and that this claim is bounded on one side for almost its entire length by Snake river, and that Connor creek flows almost directly across the defendant's land and empties into said river on said premises, so that there are no riparian owners below the defendant on said creek. In 1874 Hinckler dug another ditch by which he diverted a portion of the waters of Connor creek, commencing a short distance above his land, by which means he conveyed the water to his land and for a long distance through the same, and then, again leaving his land, the water was conveyed to a placer mining claim, where the same was used for some time for mining. After the mine was worked out, the water flowing in this ditch was also used by the said Hinckler for irrigating his land. Hinckler's ditches are numbered respectively one and two. Ditch numbered three taps Connor creek above number two and conveys water to the land of Hill, mentioned in the pleadings. This is an old ditch, but was dug after the ditches numbered one and two, and was repaired and used by Hill some three or four years ago. The ditch marked number four on the plat taps Connor creek a long distance above number three, and is known as the Tarter & Huffman

ditch, and was used for awhile to convey water to a placer mine in Douglass gulch. It was also constructed after Hinckler had settled upon his homestead and had diverted the water from Connor creek in both ditches numbered one and two. Whatever right, title or interest Hinckler had in the land described at the time of his death passed to the defendant by virtue of the deed made by the administrator of Hinckler. It is therefore necessary to determine what rights Hinckler acquired in said land by virtue of his homestead settlement and subsequent compliance with the act of congress granting homesteads to actual settlers upon the public lands of the United States, and the issuance to him of a patent therefor by the United States.

Under the third section of the act of congress of March 14, 1880, chap. 89 (21 stat. 141), it is provided that "any settler who has settled or who shall hereafter settle on any of the public lands of the United States, whether surveyed or unsurveyed, with the intention of claiming the same under the homestead laws, shall be allowed the same time to file his homestead application and perfect his original entry in the United States land-office as is now allowed to settlers under the preëmption laws to put their claims on record, and his right shall relate back to the date of settlement, the same as if he settled under the preëmption laws."

In *Larsen* v. *The O. R. & N. Co.*, decided at the present term, it was held, in effect, that a settlement made by a homestead claimant upon the public lands of the United States and compliance with act of congress on the subject, segregated the same from the public lands and cut off intervening claims, and such is the ruling of the land department of the United States.

Since the announcement of the opinion in *Larsen* v. *The O. R. & N. Co.*, *supra*, this case was argued, and our attention has been called to the recent opinion of the supreme court of the United States in *Steers* v. *Beck*, 10 Fed. R. 350.

The opinion of the court in that case is very exhaustive, and fully and conclusively settles the legal question under

consideration adversely to the appellant. In that case the identical question, in principal, involved here was presented, and it was held that a homestead claimant's riparian rights attached from the date of his settlement, provided he complied with the law and obtained a patent for the land, and that when such patent was issued it related to the date of settlement and cut off the right to divert a stream of water running through such homestead. But the plaintiff claims to have the superior right to this water, and he seeks to prove title to the same in two ways: first, through an ex-sheriff's deed offered in evidence purporting to convey certain ditches and water rights of Hinckler to A. J. Lawrence; and, second, by prior appropriation and adverse possession of the water for more than ten years.

(2) These claims will therefore be examined. The deed of ex-Sheriff Boyd, of Baker county, is dated the twenty-fourth day of April, 1877. The deed recites that the execution upon which the sale was made was tested the thirtieth of May, 1866, on a judgment rendered the same day by the circuit court of the State of Oregon for Baker county in favor of Louis Pfieffenberger & Co. and against Christain Hinckler. The date of the levy is not recited in the deed, but it is recited that the sale was made on the seventeenth day of September, 1874, more than eight years after the date of the execution. The amount of judgment is not mentioned, but the deed recites that the sum of $300 was realized upon the sale, and it is stated that the sale was confirmed on the thirteenth day of October, 1875. After reciting the sale of the two ditches running through Hinckler's homestead, before referred to in this opinion and numbered one and two, the deed undertakes to convey the same to A. J. Lawrence. The respondent takes several objections to this deed; one is, that no judgment was offered in evidence, and therefore it is not shown that the execution recited in the deed was legally issued. An execution, regular upon its face, emanating from a court of competent jurisdiction, will

protect an officer who obeys it; but the rule is different when a purchaser claims under an execution sale. In such case it is well settled that a person seeking to recover property, and basing his claim upon an execution sale, must prove the judgment upon which the writ issued. 2 Freeman on Ex., § 350; *McRae* v. *Daviner*, 8 Or. 63.

(3) It is next objected that the execution at the time of the sale was dead in the hands of the ex-sheriff; that the official life of the sheriff had terminated, and that the writ by lapse of time had ceased to be of any validity for any purpose whatever. This objection must also prevail. By section 278, Hill's Code, an execution is returnable within sixty days after its receipt by the sheriff to the clerk's office from whence it issued; and by section 293 this time may be enlarged thirty days by the consent of the plaintiff endorsed upon the writ. In this case it does not appear that the officer had made a levy under the execution while it was still in force. The sole question, therefore, is whether or not a sheriff may hold an execution until long after the return day and until his term of office has expired and then make a levy and sale. No authority was cited upon the argument to uphold such a proceeding, and I think none can be found. On the contrary, such a writ is *functus officio* and confers no authority whatever, and any attempted levy and sale by virtue of it are nullities. Freeman on Ex. §§ 58, 106; *Lehr* v. *Rogers*, 3; *Smedes & Marsh*, 468; *Kane* v. *Preston*, 24 Miss. 133; *Dale* v. *Metcalf*, 9 Penn. St. 108; *Cash* v. *Tozier*, 1 Watts & S. 519.

(4) Another difficulty presents itself. The two ditches dug by Hinckler, and which are claimed to have been sold by virtue of this execution, were dug mainly through his homestead. One was used exclusively to irrigate his land, and the other also after a small placer mine had been worked out. Without the use of this water upon the land it would be of but little value and could probably never have been occupied as a homestead or for any agricultural or horticultural purpose. I think, therefore, that we must treat the ditches and the water in them flowing over this

homestead and used for the purpose of irrigating it as a part of the land itself and not severable therefrom. In such case the homestead is exempt from liability for debts contracted prior to the issuing of the patent. *Clark* v. *Bayley*, 5 Or. 343.

(5) Finally, it is objected that an ex-sheriff has no power in this State to make a deed to property sold on execution. This question appears to have been considered by this court in *Moore* v. *The Willamette T. & L. Co.*, 7 Or. 359, in which the conclusion was reached that the sheriff in office at the time the certificate is produced and the deed demanded, is the proper officer to make the deed, and not the one who made the sale and whose term of office has expired. The plaintiff does not use or seek to use either one of the Hinckler ditches described in this ex-sheriff's deed, and so far as I can see the only object of its introduction was to extinguish Hinckler's right to the water flowing in his ditches and to transfer the title to the water as severed and separated from the land to the plaintiff by mesne conveyances from Lawrence. In other words, it is claimed that by this deed Lawrence acquired this right to the water and that he or his successors in interest might lawfully divert it into other ditches and take it for their own use and benefit, and that Hinckler's right to the water, whether as riparian owner or first appropriator, thus become vested in Lawrence and his successors in interest. If there were no valid objection to the deed, and the land and water where it flowed had been subject to levy and sale, I doubt very much whether the results claimed by the appellant would have followed. What Lawrence claimed to have acquired by that sale were the ditches across Hinckler's land and the water in them. I do not see how it gave him any right to the water before it entered the ditches or conferred upon him the right to go higher up the stream and there dig ditches of his own and take the water out at another and different place. But it is unnecessary to decide this question for the reasons already indicated.

(6)   The remaining question is whether or not the plaintiff and those under whom he claims had acquired a title to this water by adverse user prior to the commencement of this suit?   Did the plaintiff and those under whom he claims have such open, exclusive, notorious and continuous adverse use of this water as to bar the rights of the defendant either as riparian owner or first appropriator of it?   On this subject I have carefully read all of the plaintiff's evidence two or three times, to ascertain the real foundation of his claim, and it all rests on the ex-sheriff's deed to Lawrence.   One Davis claims to have been in possession of the water in Hinckler's ditches as Lawrence's tenant and he delivered possession to Tarter & Huffman, from whom the plaintiff seeks to deraign title; but the possession was never exclusive and it was not continuous.   Hinckler, as long as he lived, firmly asserted his right to this water against all claimants, and maintained it with so much firmness that he lost his life in a difficulty with Davis growing out of the disputed claims to the water now in controversy.   Giving full effect to the evidence on each side, and it appears that for several years no one had the exclusive use of the water; sometimes one was using it and then another, but the possession of none of the claimants was continuous or of such a character as to constitute *adverse possession* against the others.   It was intimated on the argument by the appellant's counsel that the water in controversy ought equitably to be divided between the parties; but I am unable to find in the evidence anything whatever upon which a division might properly be made.

Finding no error in the decree of the court below, it must be affirmed.