[Argued June 13, 1893; decided June 27, 1893.]

## JOHNSON *v.* BRIDAL VEIL LUMBERING CO.

[S. C. 33 Pac. Rep. 528.]

1. PUBLIC LANDS—HOMESTEAD—TIMBER LAND.—The fact that a tract of land is such as might be acquired under the Timber Act (20 U. S. Stat. 89), does not preclude anyone from acquiring title thereto under the homestead laws, if entry is made before anyone applies to purchase under the former Act.

2. PUBLIC LANDS—CONCLUSIVENESS OF DECISION OF LOCAL LAND OFFICERS.—The approval by local officers of final proof of a homestead entry which has been commuted, and the receipt and acknowledgment of the money therefor, is conclusive, in the absence of any allegation of fraud, that the land was of such character as could be acquired under the homestead laws of the United States.

3. PUBLIC LANDS—FORFEITURE OF LAND GRANT—TITLE BY RELATION.—One who at the time of the forfeiture of the Northern Pacific Land Grant by the Act of Congress of September 29, 1890, was an actual settler on such grant, and who, within six months after the passage of that act, made claim to his tract under the homestead law, will be considered as an actual settler from the date when he actually settled on the tract (*Faull* v. *Cooke*, 19 Or. 455, approved and followed); and a railroad company cannot, at any time subsequent to such actual settlement, locate its right of way over such settler's land under the Act of Congress of March 3, 1875, granting rights of way over the public lands of the United States: *Larsen* v. *Or. Ry. & Nav. Co.* 19 Or. 240, and *Faull* v. *Cooke*, 19 Or. 455, approved and followed.

4. COMMUTING HOMESTEAD ENTRY — PRE-EMPTION.— The commuting of a homestead entry, under U. S. Rev. Stat. § 2301, by paying money in lieu of the time settlement, does not change the entry into a pre-emption.

## Multnomah County: LOYAL B. STEARNS, Judge.

This is a suit by D. S. Johnson to enjoin the Bridal Veil Lumbering Company from constructing its railroad across plaintiff's land.   The material facts are that on November 22, 1889, plaintiff was duly qualified to enter government lands under the homestead law of the United States, and on that day settled on the south half of the north half of section twenty-five, in township one, north of range five, east of the Willamette Meridian, which was embraced within the limits of the land granted to the Northern Pacific Railroad Company by the joint resolution of congress of May 31, 1870, for the purpose of enabling it to construct its main road to some point on Puget Sound, via the valley of the Columbia River.   By an act of congress approved September 29, 1890, said grant was forfeited, and the lands restored to the public domain.   The defendant is a corporation created for the purpose of constructing and operating a railroad from Bridal Veil, on the Columbia River, to the base of Mt. Hood in Oregon; and in pursuance of the act of congress of March 3, 1875, it surveyed a line for its railroad across the land in question, and filed proof of its organization and a map of said survey with the secretary of the interior, who approved the same September 18, 1889.   The defendant, desiring to change, made another survey which crossed plaintiff's land on a different line from the first, and sent the map thereof to the commissioner of the general land office, who mailed it to the defendant to be filed in the local land office, but, said map having been lost, a duplicate thereof was filed, which on July 1, 1891, was approved by the secretary of the interior.   The defendant commenced to build its railroad across the land in question on the line of this second survey, when the plaintiff, who had filed

his homestead entry thereon, began this suit.   The defendant's contention is that the said land is unfit for cultivation, and valuable chiefly for timber, and that it is not subject to entry under the homestead law.   After the issues were completed, the plaintiff, on June 26, 1891, by leave of the court, filed a supplemental complaint, alleging that he had commuted his entry, and was then the owner of said land.   The cause was referred to G. G. Gammans, Esq., to take and report the evidence, with his findings of fact and conclusions of law.   The report of the referee, being against defendant's contention, the court approved the same, and decreed a perpetual injunction against it, from which it appeals.   Affirmed.

*Lewis L. McArthur* (*Earl C. Bronaugh, Wm. D. Fenton,* and *Earl C. Bronaugh, Jr.,* on the brief), for Appellant.

*James Finley Watson* (*Edward B. Watson* on the brief), for Respondent.

MR. JUSTICE MOORE delivered the opinion of the court:

1.   Defendant contends that because the surface of the land embraced in plaintiff's entry is broken and heavily covered with valuable timber, it is not subject to entry under the homestead laws of the United States, and that no title thereto can be acquired except under the act of congress of June 3, 1878 (20 U. S. Statutes, 89).   That act provides "that surveyed public lands of the United States within the states of California, Oregon, and Nevada, and in Washington Territory, not included within military, Indian, or other reservations of the United States, valuable chiefly for timber, but unfit for cultivation, and which have not been offered at public sale according to law, may be sold to citizens of the United States, or persons who have declared their intentions to become such, in quantities not exceeding one hundred and sixty acres to any one person or association of persons, at the minimum price of ·

two dollars and fifty cents per acre; and lands valuable chiefly for stone may be sold on the same terms as timber lands; *provided,* that nothing herein contained shall defeat or impair any *bona fide* claim under any law of the United States, or authorize the sale of any mining claim, or the improvements of any *bona fide* settler, or lands containing gold, silver, cinnabar, copper, or coal, or lands selected by said states under any law of the United States donating lands for internal improvements, education, or other purposes." It will therefore be seen that this act exempted from sale any *bona fide* claim under any law of the United States. A homestead entry is a claim under the law of the United States, and, when made, is exempt from sale under the provisions of the timber act. It might be safely said that a homestead claimant who desired such a tract for a home and agricultural purposes had not exercised very good judgment in the selection, but if he could grow crops thereon, he would be entitled under the law to make his final proof and receive his patent. His right to make final proof and obtain a patent rests upon his cultivation of the soil, and not upon the exercise of his judgment in the selection of his homestead. Lands which are "valuable chiefly for timber, but unfit for cultivation," within the meaning of the act of congress of June 3, 1878, have been defined by the supreme court of the United States to mean such as are covered with heavy timber at the time of the purchase, notwithstanding the fact that by large expenditures of money and labor they may be rendered suitable for cultivation: *United States* v. *Budd,* 144 U. S. 154 (12 Sup. Ct. Rep. 575). The evidence conclusively shows that this tract of land is clearly such as might be acquired under the timber act, but this ought not to preclude any person from acquiring the title under the homestead law, if the entry was made before any person had applied to purchase under the former act.

2.   Plaintiff, by leave of the court, filed his supplemental

complaint in which he alleges that on June 16, 1891, he made final proof of settlement and cultivation, and commuted his homestead entry under the provisions of the eighth section of the act of congress approved March 2, 1862, paid the purchase price thereof, and received from the register and receiver their certificate No. 5183 of such commutation, and that he was then the owner of said tract by purchase and in the possession thereof.   To this supplemental complaint the defendant answered denying each and every allegation thereof, but it does not allege that said certificate was fraudulently executed.   The land department, in the first instance, is the sole judge of every fact which is to be considered in determining the rights of the respective applicants for government lands, and, in the absence of fraud, or some other element to invoke the jurisdiction and powers of a court of equity, the determination of the land officers as to the fact whether the given tract is or is not fit for cultivation, is conclusive:  *United States* v. *Budd,* 144 U. S. 154 (12 Sup. Ct. Rep. 575).   In *Shepley* v. *Cowan,* 91 U. S. 340, it was held that when the officers of the land office err in judgment upon a question of fact the courts can furnish no relief; but in cases of fraud upon their part the courts will review their action, as well as their construction of the law.   In *Johnson* v. *Towsley,* 13 Wall. 86, it was also held that when the officers of the land office decide controverted questions of fact, in the absence of fraud, or impositions, or mistakes, their decision on these questions is final, except as they may be reviewed on appeal in that department.   It follows then that when the plaintiff commuted his homestead entry, made his final proof, and the local officers approved the same, received his money for the land, and executed the receipt therefor, they passed upon the questions of fact therein raised, and in the absence of any allegation of fraud, their action is conclusive upon such questions, and that the land was of that character which plaintiff could

acquire under the homestead laws of the United States.

3. The answer admits that the land embraced in plaintiff's entry was at the date of his settlement included in the grant to the Northern Pacific Railroad Company under the joint resolution of congress of May 31, 1870, and alleges that when this land was withdrawn for the benefit of that railroad company it thereby ceased to be public land of the United States, and the title was held in trust for that company, upon the performance of the conditions named in the grant. The act of March 3, 1875, granting rights of way over the public lands of the United States, could not apply to this land for the reason that it was not public lands of the United States, but was withdrawn for the Northern Pacific Railroad Company, hence the defendant could claim no rights therein by reason of the filing or approval of its map until the said grant was forfeited. When the grant to the Northern Pacific Railroad Company was forfeited, September 29, 1890, section 2 of the act provided that all persons who, at the date of the passage thereof, were actual settlers in good faith on any of the lands thereby forfeited, and were otherwise qualified, on making due claim on the said lands under the homestead law, within six months after the passage thereof, should be entitled to a preference right to enter the same under the provisions of the homestead law and said act, and should be regarded as actual settlers from the date of actual settlement or occupation. The plaintiff settled upon this land November 22, 1889, and made his homestead entry within the prescribed time; and when he made his final proof his title to the land related back to the date of his settlement, and the said second survey being subsequent to plaintiff's settlement and entry, the defendant could not rightfully enter upon said land and locate a new right of way under the act of 1875: *Larsen* v. *Or. Ry. & Nav. Co.* 19. Or. 240 (23 Pac. Rep. 974); *Faull* v. *Cook*, 19 Or. 455 (26 Pac. Rep. 662); *Sturr* v. *Beck*, 133 U. S. 541 (10 Sup. Ct. Rep. 350).

4.  The defendant claims that when the plaintiff commuted his entry, and paid the money in lieu of the time required under the homestead law, he thereby changed his entry into a preëmption, and in consequence thereof its rights attached under its second map of withdrawal, and became paramount to plaintiff's.  The commutation of a homestead entry under section 2301, revised statutes, is not an exercise of the preëmption right: 4 Dec. Dep. Int. 441; *Cotton* v. *Struthers*, 6 Dec. Dep. Int. 288; *Re Hewit*, 8 Dec. Dep. Int. 566.  It was held in *Hastings R. R. Co.* v. *Whitney*, 132 U. S. 357 (10 Sup. Ct. Rep. 112), that the decisions of the land department on matters of law were not binding upon that court, but that on questions similar to the one involved in this case they are entitled to great respect at the hands of any court.  It would seem that the commutation of a homestead is not the exercise of the preëmptive right, and that the decisions of the land department upon this question, while not binding upon the courts, are consonant with reason and the rule in such cases.

It follows that the plaintiff's entry was prior to defendant's second survey, and that it had no right to construct its railroad across his land, and that the decree of the court below must be AFFIRMED.