Argued 15 July; decided 4 August, 1902.

## MILES *v.* COLUMBIA PACKERS' ASSOC.

[69 Pac. 827.]

EVIDENCE OF EMPLOYMENT OF PLAINTIFF BY DEFENDANT.

The evidence adduced by plaintiff does not show an employment by defendant or a promise to pay him, and the court properly entered a nonsuit.

From Clatsop: THOMAS A. McBRIDE, Judge.

This is an action by Thomas Miles against the Columbia River Packers' Association to recover wages alleged to be due from the defendant. It is averred in the complaint that the defendant is a private corporation, for which plaintiff performed 90 days' labor, at its instance and request, between April 1 and August 10, 1900, in operating a seine, for which it promised and agreed to pay him on the latter date $2 per day, or the sum of $180, no part of which has been paid. The complaint also

states eight other causes of action on account of labor performed, the averments in respect thereto being substantially the same as in the first, except as to the amounts claimed by the persons hereinafter named, who assigned to plaintiff their respective demands, as follows: James Hussey, $216; John Arquette, $181; George Stuart, $114; Cusick Arquette, $115; John Paul, $55; Sam Downie, $230; Robert Clunis, $228; and Sin Sam Wah, $130. The answer admits that the defendant is a corporation, but denies the other material allegations of the complaint. At the trial plaintiff introduced his testimony and rested, whereupon the court, on defendant's motion, gave a judgment of nonsuit, and plaintiff appeals.                    AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. George Noland* and *Mr. Henry E. McGinn.*

For respondent there was a brief over the name of *Fulton Bros.,* with an oral argument by *Mr. Chas. W. Fulton.*

MR. CHIEF JUSTICE MOORE, after stating the facts, delivered the opinion of the court.

It is contended by plaintiff's counsel that the testimony shows that their client and his associates were employed by the defendant in pursuance of authority conferred by its general manager upon one Fritz Miller, who for some time had been operating a seine for it; that during the fishing season of 1900 the defendant did many things that led the plaintiff, and those whose claims were assigned to him, to believe that the business in which they were engaged was being conducted for the corporation; that near the close of the season one of its agents, fearing an abandonment of the work, stimulated the hope and held out the inducement that the contracts made in its name by Miller would be carried out; that it paid orders issued by him to several laborers for their work in 1900; that during the preceding year it carried into effect all agreements made by Miller with the men engaged in operating the seine; that acts similar to those which constituted him its agent in 1899 continued him in that relation

during the fishing season of the next year; and that the defendant's immediate and pecuniary interest in the contracts, in pursuance of which the labor was performed, renders its promise to pay therefor not an undertaking to answer for the debts of another, but furnishes an original obligation, which is enforceable by Miller's employes against it, and hence the court erred in granting the nonsuit.

The testimony shows that during the fishing seasons of 1899 and 1900 Fritz Miller operated a seine at the head of Puget Island in the Columbia River, catching and shipping salmon to the defendant, which was engaged in canning them; that in 1899 Miller issued orders on the defendant for the wages of his men, which were promptly paid, but, the value of the fish received being less than the sums so paid, Miller gave the defendant a chattel mortgage on his fishing "gear" to secure the payment of the sums overdrawn, its general manager then assuring him, in referring to the operation of his seine the next year, that "we will see you through," and also saying "that they would back him"; that in 1900 Miller employed the plaintiff and others to assist him, agreeing to pay them $2 a day; and, having shipped to the defendant about $6,000 worth of fish, he gave to each of his employes, when quitting his service, an order on the defendant, which, omitting the name of the person to whom issued, the date when given, and the sum for which it was drawn, is as follows:

"Mathew Sands, ———, 1900.

$——— for labor.
  C. R. Packers' Assn.,
          Astoria, Or.

Dear Sirs:—

  Please pay to ——— ——— $———, and charge to the account of
                                              Fritz Miller."

The defendant paid all such orders presented prior to July 20, 1900, but refused to pay those issued to the plaintiff and his associates at the close of the fishing season, August 10, 1900. Miller, as plaintiff's witness, being questioned as to what the defendant's general manager said in relation to paying the

claims due for labor, replied: "He never specially mentioned the men, or any particular thing, at any time; never mentioned any particular person at any time." The witness having testified that he was operating the seine for the defendant, an objection was interposed on the ground that he ought not to be permitted to give his conclusions, whereupon the court admonished him to state the facts, obeying which he testified, in substance, as hereinbefore stated.

A careful examination of the testimony leads us to conclude that Miller had no express authority from the defendant's general manager to employ laborers to assist him in operating the seine; nor do we think he was conducting the business for the defendant, except that, in consideration of money to be advanced, he agreed to ship to it such salmon as he might catch; for the orders issued by him to his employes conclusively show that his account was to be charged with the sums paid thereon. The plaintiff, appearing as a witness in his own behalf, having testified that on July 20, 1900, he visited one of the defendant's agents, was asked why he did so, and replied: "Fish slackened off .a little, and we were only making about expenses, and we got a little uneasy about our money, and we agreed to go down,— send some man down to find out. I got down, and went to the office, and asked Mr. Mattack if this was the Columbia River Packers' Association office, and he said, 'Yes,' and I told him where we were working, and he said, 'All right, keep right ahead.'" The defendant's counsel objected to any testimony in respect to Mattock's declarations until his authority to speak for the defendant had been established, but the court permitted the witness to answer, subject to the condition that, if such authority was not proven, the testimony should be struck out, whereupon he continued: "I wanted to find out about the wages, and he said: 'We are good for the wages. Go back and go to work, and we will pay you the wages when the season is over.'" The testimony, however, fails to show that Mattock possessed authority to bind the defendant by any statements that he might make, even if it be assumed that in an action of this form the defendant could be rendered liable by such a declaration. In 1899 the

defendant having paid all orders drawn on it by Miller, took a mortgage on his "gear" as security for the sums paid in excess of the value of the salmon received; but this fact, and the statement made by its general manager, in referring to the fishing season of 1900, wherein he said, "We will see you through," and that they "would back him," do not seem to have allayed the apprehension of the plaintiff and his associates in respect to securing their wages, for he says that, as they were only making about expenses, "we got a little uneasy about our money." We do not think the testimony shows that Miller was the defendant's agent in operating the seine, even in 1899; for, though all orders drawn by him on the defendant in favor of the laborers were paid by it, the giving of a mortgage to secure such payments shows that he was operating the seine for his own benefit. The contract between the defendant and Miller was an agreement to furnish him money with which to prosecute his business, without stipulating what sum should be advanced for that purpose; and, the defendant's general manager having made no mention of the men to be employed by Miller, his promise to "back him," and to "see him through," was evidently nothing more than an agreement, in consideration of securing the salmon to be caught, to advance on account thereof a reasonable sum of money. There being no ambiguity in the terms "see him through" and "back him," the court was competent to define such clauses, without referring them to the jury, to determine their meaning, or to explain what was thus understood by the parties; and, the relation existing between Miller and the defendant in 1899 being that of debtor and creditor, their course of dealing at that time would not alter the rule.

There was, in our opinion, no competent testimony introduced at the trial tending to render the defendant liable for the wages of the laborers employed by Miller to assist in operating his seine, and, no error having been committed in granting the nonsuit, the judgment is affirmed.          Affirmed.