Argued January 28, affirmed February 25, rehearing denied April 1, 1919.

## BROWN *v.* ALMASIE.

(178 Pac. 928.)

**Public Lands—Homesteads—Who may File.**

1.   Under act of Congress (Comp. Stats., § 4530), providing that no person who is a proprietor of more than 160 acres of land shall acquire any right under homestead laws, man disqualified to make homestead entry by reason of ownership of too much land may qualify by disposing of surplus portion by gift or by sale, even though purpose of

transaction is to qualify himself, provided conveyance is final and in good faith.

**Public Lands—Homesteads—Who may File.**

2. A person disqualified to file on a government homestead by reason of having too much land cannot qualify himself by a transfer of legal title, unless parties intend that really beneficial ownership shall pass permanently.

**Public Lands—Homestead—Who may File—Questions of Fact.**

3. Where one, disqualified to file on government homestead by reason of owning too much land, conveys legal title to another of surplus owned by him, whether or not transaction is final and in good faith, so as to give him a right to file, in any given case, is a question of fact to be decided upon evidence, both direct and circumstantial.

**Public Lands—Homesteads—Who may File—Qualification.**

4. In action which involved plaintiff's right to file on public lands, evidence *held* sufficient to sustain finding that plaintiff was not qualified to file by reason of owning more than 160 acres, in that transfer of legal title of part of land owned by him was not a *bona fide* transaction intended to pass a real beneficial interest.

**Public Lands—Decisions of Land Department—Conclusiveness.**

5. In absence of fraud, a decision of Land Department in contest cases, based on questions of fact, is final and binding upon courts, and cannot be disturbed on account of weight of evidence, or because court itself upon same evidence would have reached a different conclusion.

[As to when the action of the land office is conclusive, see note in 20 Am. Dec. 273.]

From Lane: GEORGE F. SKIPWORTH, Judge.

Department 2.

On the twenty-first day of September, 1906, Samuel W. Brown, plaintiff herein, filed his homestead claim upon certain public lands in the Roseburg Land District, described as Lots 1, 2, 3, and 4, section 30, T. 16 S., R. 7 W. of the W. M., the same being the lands in controversy herein. It is conceded that the lands were then subject to homestead entry, and that the plaintiff was a qualified homestead claimant, unless he owned at the time more than 160 acres of land. Afterwards, and within the time required by law, he moved his residence upon the homestead claim in dispute, and made con-

siderable improvements thereon, and continued to re-
side upon the premises, as required by law.

On the 10th of October, 1908, and while the plaintiff
was still residing upon the claim, the defendant Joseph
Almasie filed in the land office a contest against the
claim of plaintiff on the ground that at the time of
making plaintiff's filing he was the owner of more than
160 acres of land, and was thereby disqualified as a
homestead claimant.

The contest proceeded to a hearing before the local
land office, and was decided against the plaintiff herein
and in favor of the contestant. This decision was ap-
pealed to the commissioner of the General Land Office
at Washington, and his decision, affirming that of the
local land office, was again appealed to the Secretary
of the Interior, who also decided against plaintiff
herein, and in favor of the contestant in the local land
office. The entry was canceled upon the record, and
thereafter Almasie, the defendant herein, filed upon the
lands in his turn.

Still later the plaintiff contested the claim of the de-
fendant Almasie, and the decision of the register and
receiver was again in Almasie's favor, and the case
was appealed by plaintiff through all the departments
and the final decision of the Secretary of the Interior
was again against the plaintiff.

During all that time the plaintiff Brown seems to
have remained in possession of a portion of the claim,
the defendant making his residence and improvements
upon a different portion.

Defendant having finally made his proof and ob-
tained a patent from the government; on the twenty-
sixth day of September, 1912, brought an action in the
Circuit Court for Lane County to recover the land in
controversy; whereupon the plaintiff herein brought

this suit to enjoin the action at law, and to have the defendant held and declared trustee of the legal title, in favor of the plaintiff.

Prior to the time of filing his original claim on the twenty-first day of September, 1906, it is conceded that the plaintiff was the owner of 329 acres of land, and about that time, but prior to the making of the filing, he executed a deed to one John Hunziker for 169 acres of the same, purporting to convey the same to Hunziker for a consideration of $2,500, and at the same time he took a mortgage back from Hunziker for the entire purchase price. The mortgage provided that the price should be paid in annual installments running for five years. No payments were ever made by Hunziker on this mortgage, unless it was a small sum of about $5.

About a month before the contract was initiated against Brown's entry by Almasie, Hunziker deeded the land to Ira Brown, son of plaintiff, in consideration of $1, Ira Brown assuming the mortgage and, it is claimed, he has since been the owner of the land.

AFFIRMED.

For appellant there was a brief over the names of *Messrs. Williams & Bean* and *Mr. A. C. Woodcock*, with oral arguments by *Mr. L. E. Bean* and *Mr. Woodcock*.

For respondent there was a brief and an oral argument by *Mr. C. M. Kissinger*.

BENNETT, J.—The abstract questions involved in the case, are:

First: Can a party, who is the owner of more than 160 acres of land, qualify himself as a homestead claimant, by executing to a third party a deed, regular and

valid upon its face, and purporting to convey the legal title to his surplus acreage, assuming (for the purpose of the question) that the deed was really intended to be fictitious in fact, and that the land was to remain in the actual ownership and control of the homestead claimant?

Second: Was there evidence in the contest in the land office between Almasie and Brown, sufficient to justify the Land Department in finding that the deed from Brown to Hunziker *was* a pretense and the title in Hunziker fictitious and apparent only?

Third: How far can the court go in such a case, in reweighing the evidence and revising or overturning the findings of the department?

The act of Congress, under which the contest before the land office was brought, provides:

"No person, who is a proprietor of more than 160 acres of land in any state or territory, shall acquire any right under the homestead law": Act March 3, 1891, Chap. 561, § 5, 26 Stat. 1097 (Comp. Stats., § 4530).

1. It seems well settled, under this statute, that a man who is disqualified to make a homestead entry, by reason of his ownership of too much land, may qualify himself by disposing of the surplus portion either by sale or gift; and even, although the very purpose of the transaction is to qualify him as a homestead claimant, provided the conveyance is final and in good faith. *Heath* v. *Dotson,* 27 Land Dec. 546, in which it is said:

"Nor is it a violation of either of said acts, for the owner of 160 acres or more, to dispose of such part of them as will enable him to make the oath required of homestead applicants under the law and departmental regulation, providing the sale is final and in good faith."

And this seems to be generally conceded to be a correct expression of the law.

2, 3. It is urged by appellant that "final and in good faith" in the above decision means, "that where one has deeded land and disposed of the same by deed, and has no power to compel a reconveyance thereof, it is final and in good faith."

It is not thought, however, that this construction can be sustained. Under such a construction, there might be an expressed or implied understanding between the parties to the conveyance; that the beneficial interest should still remain in the grantor, and that only the apparent title should pass. Under such an understanding, there might be no power to actually compel a reconveyance, and yet the transaction would certainly not be final or in good faith. To hold otherwise, would be to open the door wide to wholesale fraud, and cunning evasion of the law, so that a party by conveying the ostensible title to a portion of his land to someone in whom he has confidence might qualify himself to take a homestead under the law and still be the beneficial owner and real proprietor of any quantity of other land. Again, the owner of a large quantity of land could make an ostensible sale, as was claimed by the contestant was done in this case, at a price much larger than the real value, and by taking a mortgage back at this exaggerated purchase price, could make the control of the legal title perfectly safe, since it would be in his power to foreclose at any time, if the grantee should attempt to assert control over the property, or should refuse to voluntarily reconvey.

It is thought that the transaction in any given case would be "final and in good faith" if the parties intended that the really beneficial ownership should pass permanently from one to the other, but not otherwise.

And whether or not there was such an actual *bona fide* intent, in any given case, is a question of fact to be decided upon the evidence, both direct and circumstantial, which is offered as to the transaction.

4. This question of fact, as to whether the transaction between Brown and Hunziker was a real *bona fide* transaction and intended to pass the real beneficial interest in the land, was presented in the land contest, to the officers of the Land Department, and the findings in. that department were, that the conveyance of the legal title was fictitious and never conveyed to Hunziker the real beneficial ownership. Was there evidence to sustain these findings?

The evidence in the contest case, taken in the local land office, was introduced in the court below in full and is presented in the transcript here, from which it appears that Hunziker never paid anything on the land whatever, unless it was the $5 referred to at one place in the testimony of the plaintiff. He did not pay the interest when it came due, and he did not pay the first installment at the end of the year. He never went into possession of any portion of the land, the plaintiff remaining in possession of the garden spot, which seems to have been about the only portion actually inclosed or used by anyone. In addition to this, the evidence on behalf of the contestant, tended to show, that the plaintiff, after the conveyance, had done a small amount of slashing on the land, and (although this is in dispute) there was evidence tending to show that the plaintiff paid, or furnished the money to pay, the taxes on the land. This is explained by the plaintiff, where admitted, upon the theory, that it was done to protect his right under the mortgage.

There was also evidence tending to show that after the conveyance in question, Brown and one L. W. Hun-

ziker entered into an agreement, which contained the following clause:

"That, whereas, S. W. Brown and L. W. Hunziker have heretofore made and entered into an agreement for the running of the farm *owned and controlled by the said Brown,* the said farm being situate in sections 30 and 31, T. 16 S., R. 7 W., and containing 329 acres, part of which farm is now held by John Hunziker, subject to a mortgage given by the said Brown.".

And said contract further provides:

"For the cutting of one million feet of timber on the said farm, the same to be logged for the joint benefit of the said Brown and Hunziker, and the said farm to be operated by the said Brown and Hunziker for their joint benefit."

In addition to this there was evidence offered by the contestant, tending to show that at different times after the conveyance, Brown still claimed to own this land. William Hayes testified to a conversation with the plaintiff, as follows:

"I had different conversations with him different times (after the transfer to Hunziker) as to what he was worth and what he had there and so on, and he told me he had *these two quarters of land* and his homestead."

And again at another place,—

"Q. At all times when you held conversation with him in reference to this land, he claimed to own it, didn't he?
"A. Yes, sir."

And again on cross-examination:

"Q. You say he exercised ownership over the land, what did he do?
"A. He always spoke about it being his land when he was there."

In one place in cross-examination, Brown himself testified:

"I did reserve the handling and looking after the land."

Some of these things, it is true, were denied and some explained by the plaintiff, but it was for the officers of the Land Department, in the first instance, to pass upon the truthfulness of the witnesses, and to decide as to how far the explanations were satisfying or convincing.

There seems then, to have been ample evidence, in the character of the transaction—the lack of any acts of ownership or control over the land by Hunziker, the retention of the use and control by the plaintiff, the payment of the taxes by him, and the evidence of his declarations of continued ownership—to base a finding upon the part of the land officers that the transaction was fictitious, and never intended to transfer the real ownership to Hunziker.

It is urged in appellant's brief that the word "proprietor" in the land laws, necessarily means in effect, the holder of the legal paper title, and technical definitions of the word are cited to support the contention, but this would entirely destroy the rule that the transaction must be "final and in good faith." Among other cases cited is that of *Aiken* v. *Ferry,* 6 Saw. 88 (Fed. Cas. No. 112). But we do not think that case places the proprietorship necessarily upon the person who holds the legal title. On the contrary, in that case it is said:

"A person who owns land in trust for another is not a proprietor of such lands within the inhibition of the pre-emption act."

And the opinion of the court fully concedes that although the record title is in one party, yet the *bona*

*fides* of the transaction may be questioned. The court says:

"So that upon the face of the record the plaintiff had no interest in these lands when he filed his declaratory statement. The *bona fides* of these conveyances has been questioned by counsel, but the only ground for suspicion is the admitted facts and circumstances of the transaction, and I think these are enough to put the party asserting that they were made in good faith to the proof of the same."

The only remaining question is as to how far the courts can go in revising the decisions of the Land Department in land contests before it.

5. It seems to be pretty well settled, that the courts may correct and nullify land office decisions, which are secured by fraud, either directly upon the part of the land officers, or by fraud practiced upon such officers, and that the courts will also correct errors of law on the part of such land officers.

But it seems, also, equally well settled, that the decisions of the Land Department in contest cases, based upon questions of fact, are final and binding upon the court, and cannot be disturbed on account of the weight of evidence, or because the court itself, upon the same evidence, would have reached a different conclusion: *Aiken* v. *Ferry,* 6 Saw. 89 (Fed. Cas. No. 112) ; *Shepley* v. *Cowan,* 91 U. S. 340 (23 L. Ed. 424) ; *Quinby* v. *Conlan,* 104 U. S. 420 (26 L. Ed. 800) ; *Lee* v. *Johnson,* 116 U. S. 48 (29 L. Ed. 570, 6 Sup. Ct. Rep. 249) ; *Johnson* v. *Bridal Veil Lbr. Co.,* 24 Or. 186 (33 Pac. 529) ; *Small* v. *Lutz,* 41 Or. 578, (67 Pac. 421, 69 Pac. 827).

In *Aiken* v. *Ferry,* 6 Saw. 89 (Fed. Cas. No. 112), where a question similar to the one under consideration was before the court, Judge DEADY, rendering the opinion, says:

"It does not appear that these conveyances were before the land office, and if they had been and a question

arose as to their integrity, the decision thereon would not be subject to review here upon the question of fact simply."

In *Shepley* v. *Cowan*, 91 U. S. 340 (23 L. Ed. 424), Mr. Justice FIELD, in delivering the opinion of the court, said:

"If the matter were open for our consideration we might, perhaps, doubt as to the sufficiency of the proofs presented by the heirs of Chartrand to the officers of the Land Department to establish a right of pre-emption, * * but, for mere errors of judgment upon the weight of evidence in a contested case before them, the only remedy is by appeal from one officer to another of the department and, perhaps, under special circumstances, to the President."

In *Quinby* v. *Conlan*, 104 U. S. 420 (26 L. Ed. 800), it is said by the same learned judge:

"It would lead to endless litigation and be fruitful of evil if a supervisory power were vested in the courts over the action of the numerous officers of the Land Department on mere questions of fact presented for their determination * * and we may also add in this connection, that the misconstruction of the law by the officers of the department, which will authorize the interference of the court, must be clearly manifest, and not alleged upon a possible finding of the facts from the evidence, different from that reached by them."

This being a federal question, these authorities would be decisive, but these cases have been frequently followed in our own court.

In *Johnson* v. *Bridal Veil Lbr. Co.*, 24 Or. 186 (33 Pac. 529), Mr. Justice MOORE, delivering the opinion of the court, quotes from *Shepley* v. *Cowan*, as follows:

"When the officers of the land office err in judgment upon a question of fact, the courts can furnish no relief."

In *Small* v. *Lutz,* 41 Or. 578 (67 Pac. 421, 69 Pac. 827), Mr. Justice BEAN, delivering the opinion of the court, quotes from *Steel* v. *Refining Co.,* 106 U. S. 447 (27 L. Ed. 226, 1 Sup. Ct. Rep. 389), that the Land Department—

"was established to supervise the various proceedings whereby a conveyance of title from the United States to portions of the public domain is obtained, and to see that the requirements of different acts of Congress are fully complied with. Necessarily, therefore, it must consider and pass upon the qualifications of the applicant, the acts he has performed to secure the title, the nature of the land, and whether it is of the class which is open to sale. Its judgment upon these matters is that of a special tribunal, and is unassailable except by direct proceedings for its annulment or limitation."

And again, quoting from *Burfenning* v. *Chicago, etc.,* 163 U. S. 321 (41 L. Ed. 175, 16 Sup. Ct. Rep. 1018):

"It has undoubtedly been affirmed over and over again that, in the administration of the public land system of the United States, questions of fact are for the consideration and judgment of the Land Department, and that its judgment thereon is final."

Here the Land Department was passing upon a question of fact—whether the plaintiff Brown was a qualified homestead claimant—whether he was the owner of more than 160 acres of land at the time he made his filing, and, incidentally, whether the deed for a portion of his land to Hunziker, was intended as a conveyance of the actual ownership and beneficial interest, or was only a fictitious and pretended transfer; and there being evidence from which the department may have inferred it was fictitious, its finding thereon is conclusive upon the court.

No claim is made in the argument that there was actual fraud on the part of the land officers, or that the

evidence establishes the allegations of the complaint, that their decision was secured by fraud; nor do we think there is any sufficient evidence which would sustain a finding to that effect.

The judgment of the court below is affirmed.

AFFIRMED.

McBRIDE, C. J., and BEAN and JOHNS, JJ., concur.