## Milton Chasnoff *v.* James V. Porto, Deputy Sheriff, et al.

Brown, C. J., Baldwin, Inglis, Cornell and Mellitz, Js.

Argued May 7—decided August 4, 1953

*Nelson Harris,* for the appellant (plaintiff).

*James F. Rosen,* with whom, on the brief, were *John R. Thim* and *John M. Murphy,* for the appellees (named defendant et al.).

*Harrison D. Schofield,* with whom, on the brief, was *Reuben Kaminsky,* appeared for the appellees (defendant Joseloff et al.).

*Charles V. James,* for the appellee (defendant Burke).

MELLITZ, J. This case presents one aspect of the situation resulting from the efforts of the defendant Nierwakowski to collect a judgment obtained in an action against the plaintiff Chasnoff and another for negligent operation of a motor vehicle. Another aspect was dealt with in *Gilman* v. *Joseloff,* 135 Conn. 595, 67 A.2d 551, where Gilman and Chasnoff, the defendants in the original action, unsuccessfully sought to restrain Nierwakowski and his attorney from levying body executions to collect the judgment. The present action, brought by Chasnoff alone, seeks damages for abuse of process and false imprisonment arising out of allegedly wrongful acts connected with the issuance of an execution and its levy on the body of Chasnoff.

The finding of the trial court, which is not subject to correction, may be summarized as follows: On July 8, 1947, the defendant Nierwakowski recovered

a judgment, based on negligence, in the Superior Court in New London County against Abraham Gilman and Milton Chasnoff. The defendant Joseloff appeared as attorney for Nierwakowski. On April 16, 1948, an execution which had been issued by the defendant Burke, assistant clerk of the Superior Court in New London County, was returned partly satisfied. On April 19, 1948, Burke issued an alias execution containing a provision for a body attachment. On May 1, 1948, the alias execution was served on Gilman by attaching his body and confining him in the jail at Norwich, a true and attested copy of the alias execution being left with the jailer. Before the execution could be sent to New Haven for service upon Chasnoff, a temporary injunction was obtained on May 5, 1948, in a separate suit in the Superior Court in New Haven County in the case of *Gilman* v. *Joseloff,* supra, restraining Joseloff and Nierwakowski from further levy on the bodies of Chasnoff and Gilman. The injunction was dissolved and judgment was entered for the defendants in the action on December 2, 1948. Joseloff retained the original alias execution in his possession pending the determination of the injunction suit, and it was not returned until November 9, 1948.

Upon appeal to the Supreme Court of Errors, the judgment in the injunction suit was affirmed on June 21, 1949. On June 23, 1949, the defendant Burke, at the request of the defendant Joseloff, issued a pluries execution containing a provision for body attachment. The pluries execution was sent to the defendant Porto, a deputy sheriff in New Haven, who located Chasnoff on June 24, 1949, explained his mission and told Chasnoff he would have to pay the amount of the execution or go to jail. At no time on June 24 did Porto put a hand on Chasnoff or tell him that he

was under arrest. Chasnoff told Porto he desired to satisfy the judgment and had sufficient estate but lacked ready cash. At the request of Chasnoff and two business associates, Porto agreed to withhold serving the execution until June 27, 1949, to permit Chasnoff to obtain money with which to satisfy the execution. On June 27, 1949, Chasnoff obtained the money with which to satisfy the execution but did not do so. On the same day, Chasnoff's attorney filed a motion to reargue the case of *Gilman* v. *Joseloff,* supra. Porto, upon learning of the filing of the motion, communicated the information to Joseloff, who instructed him to withhold further action on the execution. On July 12, 1949, the motion to reargue was denied. On July 15, 1949, Porto proceeded to levy the pluries execution. Chasnoff stated to him that he was going to pay the execution and so informed his attorney by telephone. His attorney advised him not to do so but to make the sheriff take him to jail. Porto delivered Chasnoff to the New Haven County jail and turned him over to the jailer, the defendant Kromer, with a copy of the pluries execution with Porto's return indorsed thereon. Kromer refused to accept the copy and demanded the original, which Porto turned over to him after indorsing his return upon it. Thereafter, on July 15, 1949, the payment required by the execution and the costs thereon were paid and Chasnoff was released. The copy of the pluries execution was returned to court on August 4, 1949. It was then sent to Porto by the clerk with instructions to obtain the original and return it to court, but the jailer refused to surrender the original and the copy was again returned to the clerk.

The plaintiff charges certain of the defendants with abuse of process. He claims that when the

pluries execution was issued on June 23, 1949, there was then outstanding, and not returned, a duplicate of the alias execution issued on April 19, 1948, and that before the pluries execution could legally be issued any previously issued execution was required to have been returned with an appropriate indorsement. This claim is dependent upon a correction of the finding sought by the plaintiff to the effect that when the clerk issued the alias execution he issued a duplicate at the same time. The correction is sought on the strength of a recital contained in the pluries execution as follows: "The duplicate Alias Execution directed to the Sheriff of New Haven County is in the files of the Superior Court at New Haven, according to advi[c]es received from Attorney Hugh M. Joseloff under date of June 21, 1949." This recital does not in itself warrant a finding, as an undisputed fact, that the alias execution issued April 19, 1948, was issued in duplicate, and there is nothing in the evidence submitted in the appendix to the plaintiff's brief to amplify the recital. Moreover, such a correction could not benefit the plaintiff. No claim is made that any levy was made on the so-called duplicate. If a duplicate was in fact issued, the time within which it could legally be served had expired long before the issuance of the pluries execution. "When the return day of an execution has past, it is of no force: and the officer has no power to execute it; and if he attempts to do it, he is liable to an action of trespass." 1 Swift's Digest 795; *Stoyel* v. *Lawrence,* 3 Day 1, 3; *Worthington* v. *Hollister,* 1 Root 101. The duplicate could properly be ignored by the clerk as invalid, and the validity of the pluries execution could not have been affected by a failure to take note of it. *Woods* v. *Brzezinski,* 57 Conn. 471, 473, 18 A. 252.

The plaintiff claims further that there was an abuse of process in that the pluries execution was issued before the expiration of the time within which a motion to reargue the case of *Gilman* v. *Joseloff*, 135 Conn. 595, 67 A.2d 551, could be filed, and while the temporary injunction issued in that case was still in effect. The temporary injunction was dissolved by the judgment entered December 2, 1948. The appeal taken from that judgment did not have the effect of continuing the injunction in force pending the appeal. When a case in which a temporary injunction has been issued goes to judgment and that judgment dissolves the injunction, it ceases to exist unless one of the parties moves for its continuance pending an appeal, pursuant to General Statutes, § 8212. "[A]n appeal from a decree dissolving an injunction can not have the effect of reviving the injunction and of continuing in force by the mere act of the party appealing a judicial order which has been set aside." 2 High, Injunctions (4th Ed.) § 1709. "When an injunction has been dissolved, it cannot be revived except by a new exercise of judicial power, and a mere appeal from the order or decree of dissolution does not affect it until reversal." 1 Joyce, Injunctions, § 334; *Virginian Ry. Co.* v. *United States*, 272 U.S. 658, 668, 47 S. Ct. 222, 71 L. Ed. 463; *Lowell Bar Assn.* v. *Loeb*, 315 Mass. 176, 188, 52 N.E.2d 27. "The original temporary injunction was dissolved by the judgment upon the merits and the order [under § 8212] gives renewed force to a prohibition made defunct by that judgment. In practical effect, it amounts to the grant of a new temporary injunction." *H. O. Canfield Co.* v. *United Construction Workers*, 134 Conn. 358, 363, 57 A.2d 624. No order was entered in *Gilman* v. *Joseloff*, supra, for a continuance of the temporary

injunction pending the appeal, pursuant to § 8212. The temporary injunction was therefore not in effect when the pluries execution was issued.

The claim that the plaintiff was wrongfully imprisoned is predicated first on a contention that he was arrested by the sheriff on June 24 and later released, and therefore could not legally be again arrested on July 15, when he was taken by the sheriff and lodged in jail. § 8112. This claim is disposed of by the finding that the sheriff did not arrest Chasnoff on June 24. It is further argued that Chasnoff was wrongfully imprisoned because the original pluries execution and not an attested copy thereof, as required by the statute, was delivered to the jailer. § 8112. The jailer obviously confused the requirements of this statute with the rule (Practice Book § 339) governing a mittimus in a criminal case, and refused to surrender the original to permit it to be returned to court. Perhaps the jailer is not to be unduly criticized for his excessive caution, in the light of all of the charges made against the various defendants in this case and the fact that at one time the plaintiff's counsel also apparently believed that the law required the original to be left with the jailer. See ¶ 5 of the complaint, A-309 Rec. & Briefs, back of p. 153. The failure to return an execution which has been duly served does not invalidate the proceedings under the execution. *Pratt* v. *Pond,* 45 Conn. 386, 388. Here a copy of the pluries execution duly indorsed was returned to court within the time limited for its service. No authority has been cited for the claim that a failure to comply literally with the statute in this regard invalidated the actions of the sheriff and the jailer under the execution. Chasnoff told the sheriff that he had sufficient estate to satisfy the execution. He could have avoided arrest

274

by disclosing it. If he failed to do so, "it comes with ill grace from him to complain that the arrest was illegal." *Bulkley* v. *Finch,* 37 Conn. 71, 84.

There is no error.

In this opinion the other judges concurred.