LINCOLN LUMBER COMPANY, A NEBRASKA CORPORATION, APPELLEE, V. GARY J. ELSTON, APPELLANT.
LINCOLN LUMBER COMPANY, A NEBRASKA CORPORATION, APPELLEE, V. GARY J. ELSTON AND KAREN K. ELSTON, APPELLANTS.

511 N.W.2d 162

Filed April 27, 1993. Nos. A-91-907, A-91-1000.

Kimberly D. Mueller, of Jeffrey, Hahn & Hemmerling, P.C., for appellant Gary J. Elston.

Douglas D. DeLair, of DeLair and DeLair, for appellee.

SIEVERS, Chief Judge, and HANNON and IRWIN, Judges.

HANNON, Judge.

This opinion considers two appeals concerning Lincoln Lumber Company's (Lincoln Lumber) attempt to execute a judgment it holds against Gary J. Elston on the home owned by Gary and his wife, Karen K. Elston. A chronological summary of the litigation between the parties is necessary to an understanding of the issues presented by these appeals.

## BACKGROUND

The Elstons purchased Lot 2, Block 6, Hillcrest Heights, Lancaster County, Nebraska, on August 31, 1978, and took title as joint tenants. The Elstons have lived at this residence since 1978. On December 4, 1978, the Elstons mortgaged this property to the First Federal Savings and Loan Association of Lincoln. Gary's evidence shows that as of September 5, 1991, the mortgage lien on the home was $50,788.94.

By quitclaim deed dated March 16, 1985, and recorded May 12, 1986, the Elstons conveyed the home to Karen. On November 4, 1987, Lincoln Lumber obtained a judgment of $194,690.31 against Gary in a case designated as docket 389, page 152, of the Lancaster County District Court. (For convenience, we will refer to this action as the creditor's judgment.) The creditor's judgment is final, and its validity is not questioned in this appeal. Lincoln Lumber sued the Elstons to set aside the quitclaim deed in a separate case designated as

docket 445, page 95, of the Lancaster County District Court. (For convenience, we will refer to this as either the fraudulent conveyance decree or the fraudulent conveyance action.) On February 25, 1991, the district court entered a decree against the Elstons, setting aside the quitclaim deed to Karen as a fraudulent conveyance. The Elstons appealed this decree, but did not supersede the judgment. After a motion for new trial was overruled, the notice of appeal was filed with the district court on July 18, 1991, and it is separately docketed in this court as case No. A-91-733. That appeal is still pending in this court.

### CURRENT PROCEEDINGS

On March 1, 1991, Karen filed an application pursuant to the "Occupants and Claimants Act," Neb. Rev. Stat. §§ 76-301 through 76-311 (Reissue 1990), in which she claimed an interest in the home for payments she had made for interest, taxes, and improvements. On March 19, Gary and Karen filed a claim for a homestead exemption. Both of these documents were filed in the fraudulent conveyance action. No attempt was made to bring either of these filings to a hearing. Defense counsel did, however, ask the judge at a September 5, 1991, hearing to take judicial notice of the pleadings in the fraudulent conveyance action.

On July 10, 1991, Lincoln Lumber filed a praecipe for execution on the judgment against Gary in the action involving the creditor's judgment. On July 18, Gary filed a motion to quash that execution, together with an "Advice and Notice to the Court." In that document, Gary advised the court of the filing of the praecipe for execution, the appeal of the fraudulent conveyance decree, the claim for exempt property under Neb. Rev. Stat. §§ 25-1503 and 25-1556 (Reissue 1989), Karen's claim under the Occupants and Claimants Act, and his claim for a homestead exemption. A hearing on the motion to quash was held in the district court on September 5, 1991.

After an evidentiary hearing, the district court overruled the motion to quash, but found that Gary was entitled to a homestead exemption in the amount of $10,000 from the proceeds of the sale of the home. The court refused to consider

Karen's claim under the Occupants and Claimants Act. Both Gary and Karen filed a notice of appeal in the fraudulent conveyance action (case No. A-91-1000 in this court), but only Gary filed a notice of appeal in the action involving the creditor's judgment (case No. A-91-907 in this court). The brief was filed in this court on Gary's behalf only.

## ASSIGNMENTS OF ERROR

Gary assigns the following errors: (1) "[T]he District Court erred in refusing to consider the effect which Karen Elston's claim under the Occupants [and] Claimants Act had on the Motion to Quash" and (2) the district court erred in finding that the motion to quash should be overruled.

## CASE NO. A-91-1000

The two appeals involved in this action were consolidated for briefing, argument, and decision. That procedure causes confusion in this case. Only one hearing was held in the district court, but two references to the fraudulent conveyance action were made in that proceeding. The first reference occurred when defense counsel asked the court to take judicial notice of the pleadings in the fraudulent conveyance action. The second reference is contained in the district court's order overruling Gary's motion to quash. Most of the evidence introduced at the hearing below had no purpose except to prove Karen's claim. The court recited the appealed status of the fraudulent conveyance action in its order and noted that Karen's claim under the Occupants and Claimants Act was filed in the fraudulent conveyance action. The judge concluded that he could not consider Gary's arguments concerning the Occupants and Claimants Act. Once an appeal has been perfected to an appellate court, the district court has no jurisdiction to enter orders until the cause is remanded. *State v. Spotted Elk*, 227 Neb. 869, 420 N.W.2d 707 (1988). The district court did not have jurisdiction over the fraudulent conveyance action at that time, and the court properly refused to take action in that case. The district court's decision not to consider anything in the fraudulent conveyance action is affirmed. The remainder of this opinion is concerned with the action involving the creditor's judgment. Thus, the issue becomes whether the district court

was correct in overruling Gary's motion to quash the execution.

## CASE NO. A-91-907

Gary contends that the motion to quash should have been granted because Karen's claim under the Occupants and Claimants Act reduces the value of his interest in the property to less than the $10,000 homestead exemption. In summary, Gary's evidence tends to establish that at the time of the hearing, the home had a fair market value of $102,000 and that it was subject to a mortgage lien of $50,788.94, leaving a net value of $51,211.06. Karen's claim is based upon her allegations that during the time she held title to the real estate by herself she paid taxes and assessments, paid interest, placed improvements upon the property, paid insurance, and made mortgage payments, which together totaled $76,005.70. Gary argues that Karen's claim should be treated as a lien that has the effect of reducing his interest in the real estate. He maintains that the mortgage lien and Karen's lien plus the homestead exemption exceed the value of the home and that, therefore, Lincoln Lumber's execution should be quashed.

If a judgment is not superseded, it is effective notwithstanding the appeal. *Production Credit Assn. of the Midlands v. Schmer*, 233 Neb. 785, 448 N.W.2d 141 (1989); *Creighton v. Keith*, 50 Neb. 810, 70 N.W. 406 (1897). Thus, for purposes of this case, the decree setting aside the quitclaim deed to Karen is effective. Without that deed, Karen still owns one-half of the real estate subject to a mortgage, but of course, Gary's one-half will be subject to the mortgage and Lincoln Lumber's judgment lien. Gary argues that even if only one-half of the assessments and improvements contained in Karen's claim under the Occupants and Claimants Act are allowed, the value of his interest is still less than his homestead exemption.

Before determining whether Gary's motion to quash should have been granted, we simply note that there is at least a possibility that Karen has a valid claim under the Occupants and Claimants Act, which claim would affect the value of Gary's homestead. Furthermore, the validity of Karen's claim could possibly be litigated for its effect upon the value of the homestead. These issues are not properly presented by the

record. Therefore, we will not be considering either issue in this opinion.

## STATUTORY PROCEDURE FOR PROTECTING THE HOMESTEAD

Neb. Rev. Stat. §§ 40-101 through 40-116 (Reissue 1988) provide the procedures by which a judgment debtor may protect his or her homestead interest. Section 40-102 provides that the homestead may be selected from the separate property of the husband or, with the consent of the wife, from her separate property. Section 40-105 provides that when an execution for the enforcement of a judgment is levied upon the lands of the head of the family, the head of the family may at any time prior to confirmation of the sale, apply to the district court to determine whether the lands are exempt as a homestead and, if so, the value thereof. Section 40-106 provides that the application must show the fact of the execution, the name of the judgment creditor, the facts that give rise to the homestead exemption, and the value of the homestead. Neither Gary's application for the homestead exemption, Karen's application under the Occupants and Claimants Act, the motion to quash, nor the "Advice and Notice to the Court" contain the information required under § 40-106. Section 40-107 provides for a notice of hearing and requires that the hearing on the debtor's application be held either before or at the hearing on the confirmation of the sale. Section 40-108 requires the court to determine whether the land is subject to a homestead exemption and, if it is, the value of the homestead.

## CASE LAW

These statutes also provide for those situations where the homestead can be divided. However, in the case of an indivisible homestead, no bid may be taken upon the sale unless the bid exceeds the amount of the homestead exemption. § 40-111. These statutes do not specifically state what the court should do if it determines that the value of the judgment debtor's interest in the property is less than the value of the homestead exemption. However, in *Sanne v. Sanne*, 167 Neb. 683, 94 N.W.2d 367 (1959), the defendant filed an application pursuant to § 40-105, and the Supreme Court found that the value of her

interest was less than $2,000 (the statutory value of the homestead exemption at the time). In *Sanne*, the trial court had entered a judgment dissolving the levy of execution by the sheriff and had ordered him not to sell the property. The trial court had also permanently enjoined the plaintiff and the sheriff from levying execution against the judgment debtor's home. The Nebraska Supreme Court modified the injunction to comply with the following rule:

> "That the decree of the district court perpetually enjoining the appellants from attempting to satisfy their judgments by judicial sale of said homestead premises should be so modified as to permit appellants, at any time, to move the court for a vacation of such injunction on showing that the appellee, still owning the legal title to said premises, had permanently abandoned the premises as a homestead, or that said premises had appreciated in value so that the interest of the appellee therein had become of a greater value than $2,000."

*Sanne*, 167 Neb. at 686-87, 94 N.W.2d at 370.

Under *Sanne*, if the value of the judgment debtor's interest in the homestead after the deduction of all valid liens is less than the amount of the homestead exemption, the district court can prohibit a sale upon execution of the homestead property until the judgment debtor's interest exceeds the amount of the homestead exemption or the homestead is abandoned. The above-mentioned statutes provide the procedures for litigating the validity, the amount, and the priority of any liens which would affect the value of Gary's homestead interest. However, he failed to use those procedures in this case.

Lincoln Lumber filed a "Praecipe for Writ of Execution," stating that it believed that Gary had personal property and an interest in specifically described real estate, that is, the home that Gary claims as his homestead. A week later, Gary filed a motion to quash the praecipe or, in the alternative, the writ of execution. It should be noted that §§ 40-105 and 40-106 provide that the head of the household may apply to the court when an execution is levied on the homestead. The record fails to show whether anything was done by either the clerk or the sheriff as a result of Lincoln Lumber's praecipe. If the statutory

procedure for execution on a judgment is considered, Gary prematurely filed his motion for relief.

Executions are a process of the court, issued by the clerk and directed to the sheriff. Neb. Rev. Stat. § 25-1501 (Reissue 1989). The officer to whom a writ of execution is delivered is to proceed to levy the same upon the goods and chattels of the debtor, and if no goods or chattels can be found, against the debtor's real estate. Neb. Rev. Stat. § 25-1518 (Reissue 1989). To levy is "[t]o do the acts by which a sheriff sets apart and appropriates, for the purpose of satisfying the command of a writ of execution, a part or the whole of a defendant's property." *Burkett v. Clark*, 46 Neb. 466, 472, 64 N.W. 1113, 1115 (1895). In levying the execution, the sheriff is "acting as an agent of the law, and not as an agent of the judgment creditor." *Credit Bureau of Broken Bow, Inc. v. Moninger*, 204 Neb. 679, 685, 284 N.W.2d 855, 859 (1979).

## CONCLUSION

In this case, the sheriff had not yet levied upon the Elstons' home when Gary filed his motion to quash. It cannot be presumed that the sheriff will levy upon property that is exempt from execution. If the sheriff levies upon personal property that is exempt, a debtor can resort to the statutory procedures outlined in chapter 25, article 15, of the Nebraska Revised Statutes. If a sheriff levies upon the debtor's homestead, the debtor can seek protection under the statutes listed above.

"The right to have an execution issued is a valuable right, for this is the only means provided by law to enforce the judgment. This right can only be taken away by some act done in compliance with law. It can never be taken away by anything less." *Halmes v. Dovey*, 64 Neb. 122, 124-25, 89 N.W. 631, 632 (1902). The Nebraska statutes do not list a motion to quash as a means of protecting the debtor's exempt property. Of course, courts of general jurisdiction, such as the district courts, have the inherent power to do all things necessary for the administration of justice within the scope of their jurisdiction. This includes supervisory power over their process and the power to temporarily stay execution on judgments rendered by them when necessary to accomplish the ends of justice and

prevent injustice. *Wassung v. Wassung*, 136 Neb. 440, 286 N.W. 340 (1939). However, in this case, if Gary has homestead rights to protect, the statutes provide an adequate procedure for protecting his homestead if it is levied upon. The trial court properly denied the motion to quash. The court's judgment in docket 389, page 152 (case No. A-91-907), denying Gary's motion to quash, is affirmed. The court's judgment in docket 445, page 95 (case No. A-91-1000), refusing to take action due to the pending appeal, is also affirmed.

AFFIRMED.