GALAXY STEEL & TUBE, INC.,
Plaintiff/Appellant,

v.

DOUGLASS COAL & WRECKING,
INC., Defendant.

Gene Douglass, Respondent.

No. 20729.

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 12, 1996.

Kirk A. Bowman, Bowman & Sivils, P.C., Springfield, for plaintiff/appellant.

John Alpers, Jr., Cabool, for respondent.

CROW, Presiding Judge.

Galaxy Steel & Tube, Inc. ("Galaxy") appeals from a judgment quashing an execution issued at its behest against Gene Douglass ("Douglass"). Galaxy's brief presents four

points relied on, the first of which avers that another judge had earlier denied a petition by Douglass to quash a previous execution, hence the judgment appealed from "violated the principle of res judicata." Before addressing that issue we recount the pertinent facts.

On August 17, 1995, Galaxy filed a "Notice" in the Circuit Court of Texas County ("the trial court"). The purpose of that document was to invoke Rule 74.14,[1] entitled "Uniform Enforcement of Foreign Judgments." Attached to the document was a copy of a document designated "Agreed Order," purporting to be a judgment of the United States Bankruptcy Court for the Northern District of Illinois ("the bankruptcy court") dated July 17, 1995. The latter document ("the bankruptcy judgment") displayed this title:

"In Re:

GALAXY STEEL & TUBE, INC.,

Debtor.

GALAXY STEEL & TUBE, INC.,

Plaintiff,

v.

DOUGLASS COAL & WRECKING, INC.,

Defendant."

The text of the bankruptcy judgment read:

"This cause coming on to be heard upon the Debtor's Motion to Correct Judgment; the Debtor having given due and proper notice of the Motion; the Court being fully advised in the premises; and the Court having jurisdiction over this core proceeding;

It is hereby ordered that:

A. The Debtor's Motion is granted.

B. Judgment by default is entered in favor of the Debtor and against Gene Douglass d/b/a Douglass Coal & Wrecking in the amount of $14,518.86 plus post-judgment interest at the applicable rate until payment is made."

On August 22, 1995, five days after those documents were filed in the trial court, an execution was issued at Galaxy's request. The execution identified the debtor as "Gene Douglass d/b/a Douglass Coal & Wrecking" and carried a "return date" of September 20, 1995.

The next event of record is a docket entry dated "10-2-95" stating: "Non est Return on General Execution filed."

Four days later, on October 6, 1995, Douglass filed a "Petition to Quash Execution." We henceforth refer to it as "Douglass' first petition." It pled, in pertinent part:

"Execution should be quashed because the U.S. Bankruptcy Court purportedly rendering the Judgment herein sought to be enforced did not have jurisdiction over Gene Douglass and further that said purported judgment cannot be enforced under Supreme Court Rule 74.14 in that said purported judgment is not authenticated in accordance with the act of Congress or the Statutes of the State of Missouri."

Galaxy and Douglass appeared by counsel in the trial court before Judge John Wiggins on November 7, 1995. A docket entry that date reads, in pertinent part: "Motion to Quash is argued and overruled." It is evident from the record and the briefs of Galaxy and Douglass that this ruling, although referring to a "Motion to Quash," was intended by Judge Wiggins as a denial of Douglass' first petition and was treated that way by Galaxy and Douglass.

On November 17, 1995, at Galaxy's request, another execution ("the second execution") was issued. Like the previous execution, the second execution identified the debtor as "Gene Douglass d/b/a Douglass Coal & Wrecking."

On December 1, 1995, Douglass filed a "Petition to Quash Execution." We henceforth refer to it as "Douglass' second petition." In pertinent part, Douglass' second petition was identical to Douglass' first petition (quoted *supra*).

Galaxy and Douglass appeared by counsel in the trial court before Judge Douglas E. Long, Jr., on December 5, 1995, and presented argument on Douglass' second petition.

1. Rule references are to Missouri Rules of Civil Procedure (1995).

On December 26, 1995, Judge Long filed a judgment stating, in pertinent part:

"After considering the arguments and briefs submitted by the parties, the Court sustains the Petition to Quash Execution herein filed by Gene Douglass for the reason that the copy of the Judgement of the United States Bankruptcy Court for the Northern District of Illinois filed herein was not properly certified as required by Section 490.130 MRS 1994 or 28 USCA Section 1738, and therefore said Judgment was not properly certified."

Galaxy brings this appeal from that judgment. Galaxy's first point relied on reads:

"The trial court erred in sustaining Respondent's second petition to quash execution because The Honorable Douglas E. Long violated the principle of res judicata in that The Honorable John Wiggens [sic] had previously heard evidence and overruled Respondent's first petition to quash execution, which was based upon the same grounds as Respondent's second petition."

Galaxy cites *Farrow v. Brown*, 873 S.W.2d 918, 920[1] (Mo.App. E.D.1994), which states:

"Res judicata principles encompass both claim preclusion, which prohibits the same parties from relitigating the same cause of action, and issue preclusion, which forbids the same parties from relitigating issues previously adjudicated. *Terre Du Lac Ass'n v. Terre Du Lac, Inc.*, 737 S.W.2d 206, 212 (Mo.App.1987)."

As explained in *Wolfe v. Central Mine Equipment Co.*, 895 S.W.2d 83, 87[8] (Mo.App. E.D.1995), issue preclusion is characterized as collateral estoppel. It is a doctrine that bars a party from relitigating factual or legal issues which were decided and necessary to a prior judgment. *Id.* at 87–88[10].

The elements of collateral estoppel are: (1) the issue decided in the prior adjudication mirrors that in the present action; (2) the prior adjudication resulted in a final decision on the merits; (3) the party against whom collateral estoppel may apply participated as a party or in privity with a party to the prior adjudication; and (4) the party against whom the doctrine may apply has had a full and fair opportunity to litigate the issue. *Id.* at 88[11].

Galaxy's first point obviously hinges on whether Judge Wiggins's denial of Douglass' first petition satisfies those elements, thus barring Douglass from raising the identical issues in his second petition.

As to element 1, it is clear that the issues adjudicated by Judge Wiggins on November 7, 1995, mirror those adjudicated by Judge Long on December 26, 1995. As we have seen, Douglass' first petition and his second petition were, in all material respects, identical.

As to element 2, Judge Wiggins's adjudication resulted in a final decision on the merits. The denial of a motion to quash an execution is appealable. *In re Marriage of Haggard*, 585 S.W.2d 480, 481[1] (Mo. banc 1979). *See also: Royall v. Legislation and Policy Division, Bureau of Retirement Ins. and Occupational Health*, 610 S.W.2d 377, 378 n. 1 (Mo.App. E.D.1980); *Carrow v. Carrow*, 294 S.W.2d 595, 597[2] (Mo.App.1956).

As to element 3, Douglass participated as a party to the adjudication by Judge Wiggins on November 7, 1995. The parties acknowledge the adjudication constituted a denial of Douglass' first petition.

As to element 4, Douglass had a full and fair opportunity to litigate the issues raised in his first petition. He appeared by counsel before Judge Wiggins and argued those issues. As we have seen, he could have appealed Judge Wiggins's ruling.

Based on the above analysis, we hold the record establishes the elements of collateral estoppel.

Endeavoring to evade the bar of collateral estoppel, Douglass avers Galaxy "abandoned the original Writ of Execution and on November 13, 1995, requested a new Writ of Execution which was issued by the [trial court] on November 17, 1995." Consequently, argues Douglass: "Since the first Execution was abandoned, an appeal of Judge Wiggins's decision would have been moot after the issuance of the second execution on November 13 [sic], 1995."

Douglass' argument is unpersuasive.[2] As reported earlier, the original execution had a return date of September 20, 1995. Galaxy did nothing prior to that date indicating abandonment.

On October 2, 1995, the sheriff returned the original execution "non est." We infer from the return that the sheriff did not levy on any property pursuant to the original execution. That inference is buttressed by Galaxy's decision to request the second execution on or about November 13, 1995.[3]

■ Additionally, we note that once the return date of the original execution passed, the original execution became functus officio.[4] *Fulkerson v. Laird,* 421 S.W.2d 523, 527 (Mo.App.1967). It had spent its force and conferred no authority for any subsequent levy. *Id.* Consequently, after September 20, 1995, none of Douglass' property was subject to levy under the original execution. If Galaxy was to collect from Douglass, Galaxy would obviously have to obtain a new execution and hope for better luck.

The factors in the three preceding paragraphs indisputably demonstrate Galaxy did not abandon the original execution. That execution expired with no levy having been made on any property of Douglass. Galaxy did not request the second execution while the original was viable; Galaxy requested the second some eight weeks after the original expired.

■ Inexplicably, Douglass filed his first petition October 6, 1995, sixteen days after the original execution expired and four days after the sheriff filed the "non est" return. By October 6, it was clear that none of Douglass' property had been seized under the original execution and, inasmuch as it had expired, no property could be seized under it.

Nonetheless, Douglass' first petition challenged the lifeless execution on two grounds: (1) the bankruptcy judgment was unenforceable because the bankruptcy court lacked jurisdiction over Douglass, and (2) the copy of the bankruptcy judgment filed in the trial court was not properly authenticated.

Those contentions are not aimed at any alleged flaw in the execution itself; instead, they challenge the enforceability of the bankruptcy judgment under Rule 74.14. It is evident that Douglass' first petition sought an adjudication that because of the two grounds set forth therein, the trial court could not enforce the judgment by execution.

Judge Wiggins ruled otherwise. Whether his ruling was correct is an issue we cannot decide, as no appeal was taken from it.

While it is evident that Douglass' first petition was wholly unnecessary to protect him or any of his property from the original execution, he nonetheless filed it and obtained Judge Wiggins's ruling a month afterward. Having sought a favorable ruling (perhaps anticipating Galaxy would request a new execution), but having gotten an adverse one, Douglass cannot now, in this court, claim Judge Wiggins's decision was moot. Had Douglass believed the issues raised by his first petition were moot, he would have had no reason to file the petition or present it to Judge Wiggins for a ruling seven weeks after the original execution expired.

■ Generally, a party will not be permitted to take a position in regard to a matter which is directly contrary to, or inconsistent with, one previously assumed by him. *Lugena v. Hanna,* 420 S.W.2d 335, 341[8] (Mo. 1967); *Porter v. Erickson Transport Corp.,* 851 S.W.2d 725, 736[7] (Mo.App. S.D.1993). Applying that rule, we hold Douglass, by seeking and obtaining a ruling on his first petition seven weeks after the original execu-

---

2. Douglass cites two cases in support of his argument but fails to explain how either supports it. We have studied both cases. The facts in each are vastly different from the facts here. Because of that, we find no support for Douglass in either case. Neither case warrants discussion.

3. The record does not reveal the date Galaxy requested the second execution. The request is dated November 13, 1995, but it may not have

been presented to the clerk of the trial court that date. As recounted earlier in this opinion, the clerk issued the second execution November 17, 1995.

4. Of no further official authority or legal efficacy. Webster's Third New International Dictionary 921 (Merriam–Webster Inc.1986).

tion expired, is foreclosed from arguing that the ruling was moot (or became so after issuance of the second execution). Had Judge Wiggins ruled for Douglass, we suspect Douglass would have maintained that the ruling barred the second execution or any later one.

To accept Douglass' mootness argument would allow him a second chance to seek a favorable ruling in the trial court on the issues raised by his first petition, thereby excusing him from appealing the adverse ruling he received from Judge Wiggins on those issues. No one is entitled to that. We therefore hold Judge Wiggins's ruling of November 7, 1995, on the two issues in Douglass' first petition barred Douglass from raising those issues in his second petition.

Judge Long's judgment of December 26, 1995 (quoted in pertinent part earlier), found for Douglass on one of those issues, i.e., the bankruptcy judgment was improperly authenticated. Because that issue is one Douglass was barred from raising by the doctrine of collateral estoppel, it follows that the judgment appealed from must be reversed. Furthermore, because the only other issue raised by Douglass' second petition was raised earlier by his first petition, that issue was likewise barred by collateral estoppel. Consequently, there was no ground in Douglass' second petition upon which Judge Long could have properly ruled for Douglass.

Having found Galaxy's first point meritorious, we need not address Galaxy's other three points.

The judgment of December 26, 1995, is reversed.

MONTGOMERY, C.J., and SHRUM, J., concur.