78 P.3d 331

Janie DITTO, Plaintiff–Appellee,

v.

John A. McCURDY, Jr., M.D., Defendant–Appellant,

and

Karla Scarpiova, Defendant.

No. 23587.

Supreme Court of Hawai'i.

Oct. 30, 2003.

See also, 98 Hawai'i 123, 44 P.3d 274.

medical diagnosis or treatment are not excluded by the hearsay rule.

---

Richard H. Grover, Honolulu, on the briefs, for defendant-appellant.

David C. Schutter and Christopher A. Dias, Honolulu, (of Schutter Dias Smith & Wong), on the briefs, for plaintiff-appellee.

MOON, C.J., LEVINSON, NAKAYAMA, and DUFFY, JJ.; ACOBA, J., concurring in part and dissenting in part.

Opinion of the Court by MOON, C.J.

This appeal arises out of plaintiff-appellee Janie Ditto's attempts to collect on judgments obtained in a medical malpractice action against defendant-appellant John A. McCurdy, Jr., M.D. (McCurdy). On November 19, 1999, the first circuit court, the Honorable Gary W.B. Chang presiding, issued a writ of execution in connection with the judgments. McCurdy appeals from the circuit court's June 19, 2000 orders: (1) denying in part and granting in part his motion to quash the writ of execution, arguing that the execution is void for failing to specify whose property was to be levied upon; and (2) denying his motion to quash levy on personal proper-

ty, arguing that the levy was invalid insofar as it was made after the expiration of the return day of the execution. For reasons discussed *infra*, Section III.A, we agree with McCurdy's second point of error and reverse the circuit court's June 19, 2000 order denying his motion to quash levy on personal property.

## I. BACKGROUND

### A. The Underlying Case

The facts of the underlying medical malpractice action are described in detail in prior opinions of the Intermediate Court of Appeals (ICA) and this court. *See Ditto v. McCurdy*, 86 Hawai'i 93, 947 P.2d 961 (App. 1997), *vacated in part*, 86 Hawai'i 84, 947 P.2d 952 [hereinafter, *Ditto I* ], *reconsideration denied*, 86 Hawai'i 84, 947 P.2d 952 (1997). Briefly stated, Ditto was disfigured as a result of breast augmentation surgery performed by McCurdy. In June 1992, a jury awarded Ditto $1,003,500 in general and special damages for negligence, $400,000 in damages for fraud, and $600,000 in punitive damages. Judgment was entered in July 1992 [hereinafter, the July 1992 Judgment].

In *Ditto I*, this court affirmed the July 1992 judgment as to the negligence claim but held that Ditto's fraud claim failed as a matter of law. 86 Hawai'i at 91–93, 947 P.2d at 959–61. Consequently, the jury's finding of liability with respect to fraud and the corresponding $400,000 in damages were reversed. *Id.* at 86, 947 P.2d at 954. Unable to ascertain how much of the punitive damages award was attributable to McCurdy's alleged fraud, we vacated the punitive damages award. *Id.* However, we affirmed McCurdy's liability for punitive damages on the ground that the jury most certainly had found McCurdy to be grossly negligent notwithstanding the erroneous fraud instructions. *Id.* at 91–92, 947 P.2d at 959–60. Accordingly, this court remanded the case for retrial solely on the issue of the amount of punitive damages to be awarded. *Id.* at 93, 947 P.2d at 961. On January 7, 1998, this court entered a notice and judgment on appeal stating in pertinent part that interest at ten percent per year, pursuant to Hawaii Revised Statutes (HRS) § 478–3 (1993),

should be applied to the affirmed $1,045,606.30 (*i.e.*, $1,003,500 in general and special damages for negligence and $42,106.39 in costs not appealed) [hereinafter, the Amended Judgment] from the date of the July 1992 judgment.

Upon remand, a jury returned a verdict of $676,700 in punitive damages. In July 1999, the trial court entered judgment in the aforementioned amount [hereinafter, the July 1999 Judgment].

### B. Writ of Execution and Related Motions

In October 1992, McCurdy filed a voluntary petition for bankruptcy in the United States Bankruptcy Court for the District of Hawai'i. As a result, Ditto's judgments against McCurdy were automatically stayed.

On August 19, 1999, the bankruptcy court issued an order granting Ditto relief from the automatic stay. In relevant part, the order allowed "Ditto to seize and auction any non-exempt items of personal property found in [McCurdy]'s residence." On November 22, 1999, Ditto, relying on the bankruptcy court's order, moved for issuance of a writ of execution pursuant to HRS § 651–32 (Supp. 1998). Although McCurdy had appealed the July 1999 Judgment, Ditto argued she should not be precluded from executing on it inasmuch as McCurdy had failed to post a supersedeas bond thereon. Moreover, McCurdy's appeal did not have any effect on the Amended Judgment.

That same day, the circuit court granted Ditto's motion, issuing a writ of execution that provided in part as follows:

TO: THE SHERIFF OF THE STATE OF HAWAII ... MAKING SERVICE OF THIS EXECUTION:

YOU ARE COMMANDED to levy upon: (1) the stock certificates of JOHN A. McCURDY, JR., M.D., F.A.C.S., INC. at 1063 Lower Main Street, Suite 225, Wailuku, Maui, Hawaii 96793; and (2) *any and all personal property found at Harbor Court, Apartment # 3502, 66 Queen Street, Honolulu, Hawaii 96813*, and, giving thirty (30) days previous notice as required by law, to sell the same or so much thereof as may be found necessary, at a public sale to

the highest bidder, in order to satisfy judgments entered in said action against Defendant JOHN A. McCURDY, JR. in favor of Plaintiff JANIE DITTO on January 7, 1998, and July 14, 1999 as follows:

| | |
|---|---|
| Judgment entered for Plaintiff | $ 1,045,606.30 |
| Post-judgment interest of 10% from July 7, 1992 to July 7, 1998 | 627,363.78 |
| Less $65,910.00 paid | <65,910.00> |
| Post-judgment interest of 10% from July 7, 1998 to July 7, 1999 | 104,560.63 |
| Final judgment entered July 14, 1999 for Plaintiff | 676,700.00 |
| Other costs and expenses | –0– |
| TOTAL | $ 2,388,320.71 |

Collect also legal interest thereon from date hereof with your costs and expenses incurred in connection with this writ of execution and *make return of this writ of execution within sixty (60) days with the proceeds you collected.*

(Emphases added.)

The record evinces that State of Hawai'i Sheriff John Kling (Sheriff Kling) tried numerous times to serve McCurdy with the writ of execution at his office in Wailuku in December 1999. Sheriff Kling was finally able to serve McCurdy on February 7, 2000.

On February 8, 2000, Sheriff Kling went to the apartment at Harbor Court in Honolulu to levy the execution. However, McCurdy advised Sheriff Kling that none of the property in the residence could be seized because it was "joint property." On February 9, 2000, Sheriff Kling returned to the Harbor Court apartment, whereupon a woman, identifying herself as McCurdy's wife, answered the door and stated that some of the property in the residence was "joint property" and some of it was owned solely by her. Nevertheless, Sheriff Kling proceeded to levy the execution, seizing 188 items.

On March 6, 2000, McCurdy filed a motion to quash the writ of execution [hereinafter, motion to quash execution] on the ground that the execution failed to specify whose property at the Harbor Court apartment could be seized. On May 8, 2000, McCurdy filed a motion to quash the levy on personal property [hereinafter, motion to quash levy],

asserting that the levy should be quashed insofar as it was made after the return day under the execution. The circuit court heard arguments on the motion to quash execution and the motion to quash levy on April 18, 2000, and June 1, 2000, respectively.

On June 19, 2000, the circuit court denied the motion to quash execution "as to the 168 items identified in the sheriff's inventory ... which [Mrs. McCurdy] claims no ownership interest in[,]" and granted the motion "as to the 20 items in [Sheriff Kling]'s inventory which Mrs. McCurdy claims an ownership interest in." The circuit court ordered also that the 20 items belonging to Mrs. McCurdy be returned to her immediately.

On the same day, the circuit court denied McCurdy's motion to quash levy. This timely appeal followed.

## II. *STANDARD OF REVIEW*

### A. *Motion to Quash Execution and Motion to Quash Levy*

The decision whether to grant or deny a motion to quash execution or a motion to quash levy involves a question of law. "Questions of law are reviewable *de novo* under the right/wrong standard of review." *Best Place, Inc. v. Penn Am. Ins. Co.,* 82 Hawai'i 120, 123, 920 P.2d 334, 337 (1996) (citing *State v. Baranco,* 77 Hawai'i 351, 355, 884 P.2d 729, 733 (1994)).

### B. *Statutory Interpretation*

"We interpret statutes *de novo.*" *Keliipuleole v. Wilson,* 85 Hawai'i 217, 221, 941 P.2d 300, 304 (1997) (citing *Shimabuku v. Montgomery Elevator Co.,* 79 Hawai'i 352, 357, 903 P.2d 48, 52 (1995)).

## III. *DISCUSSION*

### A. *Motion to Quash Levy*

McCurdy asserts that the circuit court erred in denying his motion to quash levy inasmuch as the levy was made after the expiration of the return day stated in the execution.

HRS § 651–34 (1993) provides that:

**Time within which execution shall be returnable.** All executions and alias executions issued by or from any court *shall be made returnable within sixty days from the date thereof.*

(Emphasis added.) The writ of execution in this case directed the authorized officer to "make return of this writ of execution within sixty (60) days[.]" The execution was issued on November 22, 1999 and was therefore returnable prior to January 21, 2000. As noted previously, Sheriff Kling levied the execution on February 9, 2000.

Ditto claims that

Hawaii law does not require that the writ of execution be carried out within sixty days of its issuance and any delay in this case was caused by [McCurdy]'s lack of cooperation and absence from the State. [HRS § ] 651–34 ... does not provide that writ of execution shall be "returned" within sixty days of its issuance, only that it is *returnable* within sixty days. Webster's New World Dictionary (Second Edition) defines "returnable" as "that *can* or *may* be returned." (Emphasis added.) Under [HRS § ] 651–34, the writ of execution could have or may have been returned within sixty days of its issuance.

(Emphases in original.)

■■■ Ditto's reasoning is flawed inasmuch as it fails to make a critical distinction between a levy of execution and a return of execution. A *levy* of a writ of execution consists of the acts by which an officer sets apart and appropriates, for the purpose of satisfying the command of the writ of execution, a part or the whole of the judgment debtor's property. *Lincoln Lumber Co. v. Elston,* 1 Neb.App. 741, 511 N.W.2d 162, 167 (1993) (citation omitted); *cf.* HRS § 651–42 (1993) ("Every levy by an officer, in pursuance of a writ of execution issued by a court or judge, shall be made by taking the property levied upon into the officer's possession, care, and guardianship."); *Everett v. Bolles,* 6 Haw. 153, 154 (1875) ("an essential ingredient of a levy [is] that the property levied upon be taken in the possession, care or guardianship of the officer"). A *return* of a writ of execution, however, is the short official statement of the officer, indorsed thereon

or attached thereto, of what the officer has done in obedience to the mandate of the writ or of the reason why the officer has done nothing. *See Union v. Barnes,* 29 Tenn. 244, 245 (1849); *Rowe's Adm'r v. Hardy's Adm'r,* 97 Va. 674, 34 S.E. 625 (1899). The purpose of the return is to establish of record that the officer has performed the official acts essential to an effective levy. *See Watt v. Wright,* 66 Cal. 202, 5 P. 91 (1884). Thus, although we agree with Ditto that the writ of execution could or may have been returned within sixty days of its issuance, the act of the *return* of execution is clearly separate and distinct from the *levy* of execution.

Moreover, it is a fundamental principle of the law on executions that, although an execution may be levied at any time before the return day of the writ, *see, e.g., Vitale v. Hotel California, Inc.,* 184 N.J.Super. 512, 446 A.2d 880, 885 (1982), and, indeed, on the day on which it is returnable, *see, e.g., Southern California Lumber Co. v. Ocean Beach Hotel Co.,* 94 Cal. 217, 29 P. 627, 628 (1892), a writ of execution cannot properly be levied after the return day. *See Chasnoff v. Porto,* 140 Conn. 267, 99 A.2d 189, 192 (1953) ("When the return day of an execution has past, it is of no force[ ] and the officer has no power to execute it."); *Willoughby v. Dewey,* 63 Ill. 246, 248 (1872) ("After the time when an execution is to be returned, it can not be executed by taking the property of the debtor."); *Hicks v. Bailey,* 272 S.W.2d 32, 32 (Ky.1954) (a sheriff has no power to make the levy after the return date on the execution); *Galaxy Steel & Tube, Inc. v. Douglass Coal & Wrecking, Inc.,* 928 S.W.2d 420, 423 (Mo.Ct.App.1996) ("once the return date of the original execution passed, [it] became functus officio"); *Fredd v. Darnell,* 107 N.J. Eq. 249, 152 A. 236, 251 (1930) (a valid levy cannot be made after the return day); *Ansonia Brass & Copper Co. v. Conner,* 103 N.Y. 502, 9 N.E. 238, 239 (1886) (a sheriff cannot levy upon property except during the life of the execution); *Faull v. Cooke,* 19 Or. 455, 26 P. 662, 662 (1890) (after the return day, a writ is *functus officio* and confers no authority). A levy accomplished after the return day is invalid, and a sale founded thereon is void. *See Waldrup v. Friedman,* 90 Ala. 157,

7 So. 510, 511–12 (1890) (a levy made after the return day held to be absolutely void); *Osborn v. Cloud*, 23 Iowa 104, 107 (1867) (sale founded upon a levy made after the return day of a writ held to be a nullity); *Preissman v. Crockett*, 194 Md. 51, 69 A.2d 797, 802 (1949) ("The law demands that a levy under a fieri facias be made before the return day, and[,] if it is not so made[,] a sale thereafter is void."); *State ex Rel. Duggan v. District Court of Second Judicial Dist.*, 65 Mont. 197, 210 P. 1062, 1064 (1922) ("a levy made after the return day specified in the execution is unauthorized, and general held to be absolutely void"); *Faull*, 26 P. at 664 (any attempted levy and sale by virtue of a writ whose return day has passed are nullities).

■ Ditto urges that a writ of execution "has a continuous life as long as the sheriff is actively working on carrying it out." However, Ditto fails to cite to, nor are we aware of, any authority to support this proposition. Therefore, in view of the great weight of authority, we expressly adopt the rule that a writ of execution cannot properly be levied after the return day. Once the return day of an execution passes, it becomes *functus officio* and confers no authority on the officer to whom it is directed. Correlatively, a levy accomplished after the return day is invalid and a sale based thereon is void.

Based on the foregoing, we hold that the levy in this case was invalid and reverse the circuit court's June 19, 2000 order denying McCurdy's motion to quash levy of execution.

### B. *Motion to Quash Execution*

Our disposition *supra*, Section III.A, renders McCurdy's first point of error moot. However, in the event a new or alias execution is sought, *see* HRS § 651–38 (1993),[1] we address McCurdy's argument to provide guidance to the circuit court and the parties.

McCurdy asserts that a fundamental requirement of a valid writ of execution is that

it accurately state whose property is subject to being taken. McCurdy points out that the District Court Rules of Civil Procedure's (DCRCP) standard execution form provides that the authorized officer levying an execution is "commanded to levy upon the personal property of _____." DCRCP, Form 53 (2000). In addition, a standard execution form of the circuit courts contained in Jay M. Fidell and Emma S. Matsunaga's *Hawai'i Collection Sourcebook* (1990) similarly provides that the authorized officer levying an execution is "COMMANDED TO levy upon the personal property of the defendant indicated above in this case." Jay M. Fidell & Emma S. Matsunaga, *Hawai'i Collection Sourcebook* § 4, 140 Form C–60(1) (1990).

Pursuant to HRS § 651–32 (Supp.1998):

Every *district judge* at the request of the party recovering any civil judgment in the judge's court, unless the judgment is duly appealed from, *shall issue the judge's execution against the property of the party recovered against, which execution may be in the form established by the usage and practice of the issuing court* [.]

(Emphases added.)

■ At the outset we observe that the DCRCP, in general, and DCRCP Form 53, in particular, are inapplicable in this case inasmuch as the DCRCP govern civil proceedings in the district courts. *See* DCRCP Rule 1 (2000) ("These rules govern the procedure in the district courts . . . in all suits of a civil nature."). Furthermore, as indicated above, HRS § 651–32 states that an "execution *may* be in the form established by the usage and practice of the issuing court." (Emphasis added.) Use of the term "may" in the plain language of the statute demonstrates that an issuing court has discretion whether to use the established form. Therefore, even assuming Form C–60(1), found in the *Hawai'i Collection Sourceboook*, is a standard form of execution sanctioned by the Hawai'i Rules of Civil Procedure (HRCP), noncompliance with

---

1. HRS § 651–38 provides in pertinent part that: Any circuit court, out of which an execution has been issued, if such execution has been returned unsatisfied wholly or in part, may issue an alias execution to the same circuit, or an execution leviable in some other circuit, for the satisfaction of the unpaid remainder of the judgment and additional costs, expenses, and commissions, which alias or testatum writ of execution shall be served in like manner as the original.

the form does not make an execution per se void. *See* HRCP Rule 84 (2000) ("forms contained in the Appendix of Forms are *sufficient* under the rules and are intended to indicate the simplicity and brevity of statement which the rules contemplate" (emphasis added)).

▮▮▮▮ Generally, statutes prescribing the form and contents of executions should be followed, *see Nepstad v. East Chicago Oil Ass'n, Inc.*, 96 Mont. 183, 29 P.2d 643, 644 (1934); *Romoli v. Motta*, 59 R.I. 201, 194 A. 733, 735–36 (1937), and if the execution contains all that is required by statute it is sufficient, *Lebreton v. Lemaire*, 43 S.W. 31 (Tex.Civ.App.1897). We point out that the only express statutory requirements under part II of HRS chapter 651 as to the form and content of a writ of execution are that it "shall be made returnable within sixty days from the date thereof[,]" HRS § 651–34, and it "shall be addressed to the sheriff, or deputy sheriff, or a police officer of any county, and shall be signed by the clerk of the court, and impressed with the seal thereof." HRS § 651–37 (1993).[2] Therefore, it is not statutorily required in Hawai'i that an execution identify precisely whose property is to be levied upon.

McCurdy cites to *Douglas v. Whiting*, 28 Ill. 362 (1862), and *Capps v. Leachman*, 90 Tex. 499, 39 S.W. 917 (1897), for the proposition that a failure to designate whose property is to be taken renders an execution void. In *Douglas*, the execution at issue commanded the sheriff "that of the goods and chattels, lands and tenements of [_____] in your county, you make, or cause to be made," the amount of the recovery. 28 Ill. at 366. The Illinois Supreme Court held the execution null and void, stating only that "[i]t is indispensable, before one's property can be sold under a judgment against him, there should be an execution against the property of the judgment debtor." *Id.*

In *Capps*, the execution therein commanded the sheriff "that of the goods and chattels, lands and tenements, of the said [_____], you cause to be made the sum

of nineteen hundred and twenty-nine dollars and ninety cents[.]" 39 S.W. at 917. The Texas Supreme Court observed that the pertinent Texas statute "prescribes, as a requisite to the execution, that it shall require the officer to satisfy the judgment out of property of the debtor, and it must have intended that the debtor's name should be given in the body of the writ." *Id.* at 918. The *Capps* court held the execution void for "fail[ing] to name the person whose property was to be subjected to its satisfaction." *Id.* at 917.

The instant case, unlike *Douglas* and *Capps*, does not involve the circumstance where a space on the execution was left glaringly open. Regardless, we are not convinced that a writ of execution is *per se* null and void simply for failing to follow a precise form in identifying the person whose property is subject to being taken. Rather, we think it prudent to examine the execution in full view of the facts and circumstances of the case. We, therefore, decline to follow *Douglas* and *Capps* here.

Turning to the case at hand, Ditto asserts that, inasmuch as the writ of execution states that the personal property is to be seized "in order to satisfy judgments entered in said action against Defendant JOHN A. McCURDY, JR.[,]" the execution was sufficiently specific to the identity of the debtor. She argues further that,

> [e]ven if the writ of execution was in some way defective for not specifying that only [McCurdy]'s property could be taken, that defect does not translate into any sort of prejudice suffered by [McCurdy] himself to the extent that his property has been seized. [Ditto] still holds a valid multi-million dollar judgment against [McCurdy] and the November 22, 1999 writ of execution was a valid collection remedy. The only alleged harm suffered was the improper taking of Mrs. McCurdy's property.

▮▮▮▮ We cannot agree. As previously indicated, the execution in this case commands the authorized officer to levy upon "any and all personal property found at Harbor Court,

**2.** We note that McCurdy does not argue that the execution in this case failed to meet the statutory requirements of part II of HRS chapter 651.

Apartment # 3502, 66 Queen Street, Honolulu, Hawaii 96813" [hereinafter, the subject phrase]. Notwithstanding that McCurdy is identified as the judgment debtor elsewhere in the execution, we believe the absence of McCurdy's name in the subject phrase renders the language, "any and all personal property," overly broad. As Ditto herself points out, several items of Mrs. McCurdy were improperly levied upon in connection with the execution. Although we cannot say with any certainty that this harm would have been avoided had McCurdy's name been included somewhere in the subject phrase, we cannot dismiss its significance. Therefore, should a new or an alias writ be pursued, we caution that more care should be taken in wording the execution in this regard. In other words, it is advisable that the writ of execution identify precisely whose property is to be levied upon.

## IV. *CONCLUSION*

Based on the foregoing, we reverse the circuit court's June 19, 2000 order denying McCurdy's motion to quash levy of execution on seized property.

Opinion by ACOBA, J., concurring in part and dissenting in part.

I concur that the writ of execution could not properly be levied after the return day, majority opinion at 522, 78 P.3d at p. 335, and that such a holding decides this case. Insofar as this decision attempts to provide "guidance," majority opinion at 523, 78 P.3d at p. 336, I must disagree with the majority's

view (1) that the writ did not accurately state whose property was subject to being taken, *see* majority opinion at 524, 78 P.3d at p. 337, and (2) that it is sufficient to indicate the "advisab[ility]" of identifying whose property is to be levied upon, *id.*

First, I believe the writ of execution was sufficiently specific to identify the judgment debtor, considering the facts and circumstances. For the writ expressly commanded levy "upon . . . (2) any and all personal property found at Harbor Court, Apartment # 3502, 66 Queen Street, Honolulu, Hawaii 96813 . . . to satisfy judgments entered in said action against Defendant JOHN A. McCURDY, JR." Second, to reduce appeals like the instant one, and to provide clear direction for parties, attorneys, and sheriffs in the future, I would adhere to those cases that hold that the writ must specifically identify the person whose property is to be seized. In the absence of this court's mandate to that effect, it is incumbent upon an issuing circuit court to specifically require identification of the judgment debtor in its writs, pursuant to Hawai'i Revised Statutes § 651–32, which grants the circuit courts authority to prescribe the form to be used in executions upon personal property.